Stephen F. HEFNER,
Plaintiff-Appellant,

v.

Ivan ALEXANDER, Jr., etc., et al.,
Defendants-Appellees.

No. 85–2030.

United States Court of Appeals,
Fifth Circuit.

Dec. 31, 1985.

Phil Burleson, Dallas, Tex., for plaintiff-appellant.

Steven D. Peterson, Jerry L. Zunker, Adele M. Winn, Austin, Tex., for defendants-appellees.

Before GARZA, TATE, and JOHNSON, Circuit Judges.

GARZA, Circuit Judge.

This appeal involves the dismissal of a suit seeking declaratory and injunctive relief from disciplinary proceedings initiated against a Texas attorney. The plaintiff, a resident of Sherman, Grayson County, Texas, is an attorney facing possible suspension or disbarment by virtue of a state decree. He filed this federal lawsuit claiming that the grievance procedures of the Texas State Bar violate his constitutional rights under the Fifth and Fourteenth Amendments as well as under federal antitrust law pursuant to the Sherman Antitrust Act, 15 U.S.C. § 1. The district court dismissed the claims on the grounds that the federal abstention doctrine and state immunity from antitrust claims precluded the court from hearing the case. It also refused to hear Hefner's claims under its pendent jurisdiction. We affirm the district court on all counts.

## FACTS AND PROCEDURAL HISTORY

The factual history of this civil action begins in 1981, when the plaintiff, Stephen Hefner ("Hefner"), was issued a private reprimand by the District 1–A Grievance Committee ("Committee") because of his conduct on behalf of a divorce client. On December 15, 1982, Hefner filed suit in the District Court of Dallas County, 192nd Judicial District of Texas, to set aside the private reprimand. The case was continued several times, and as of December 4, 1984, was still pending in state court. On January 27, 1984, the Committee began hearings on five more complaints filed against Hefner. Hefner requested of the Committee that he be given notice of specific violations, a list of the adverse witnesses, a list of the Committee members who had spoken with the complainants or witnesses, and a summary of what the adverse witnesses had said. Hefner also requested, as a matter of constitutional right, that he be allowed to cross examine the witnesses, to have access to evidence against him, and to receive a transcript of the proceedings. The Committee rejected each of Hefner's requests.

On February 2, 1984, an article about the grievance proceedings appeared in the Sherman *Democrat*, the local newspaper where Hefner resides. It related that Hefner was the subject of a private reprimand by the Committee, that he had appealed the matter to a state district court in Dallas, and that the case was expected to go to trial on March 26, 1984.

Hefner filed suit in federal district court on May 4, 1984 claiming that the Texas grievance procedures violated his constitutional rights and constituted a restraint of trade under the Sherman Antitrust Act, 15 U.S.C. § 1. Hefner's original complaint named Ivan Alexander, Jr., Chairperson of the State Bar of Texas Grievance Committee District 1–A and the State Bar of Texas ("State Bar") as defendants but he subsequently amended his complaint. He deleted the State Bar of Texas as a defendant and added as parties the appointees to the District 1–A Grievance Committee and the members of the Board of Directors of the State Bar, as well as the executive director and two Supreme Court Justices who served as liaisons to the State Bar. The defendants moved to dismiss the suit on May 14, 1984. On July 16, 1984, however, this Circuit decided *Bishop v. State Bar of Texas*, 736 F.2d 292 (5th Cir.1984) in which we held that *Younger* abstention in certain pending state proceedings does not foreclose injunctive relief based on allegations of bad faith prosecution of disciplinary proceedings. *Id.* at 294–95.

On October 5, 1984, a hearing was held to determine whether defendants had acted in bad faith or for the purpose of harassing Hefner when they initiated disciplinary proceedings against him. The court made an oral finding at the hearing that Hefner had not carried his burden of proving that the defendants had conducted their investigations with impermissible motivations. The court also held, in a memorandum opinion and order, that Hefner's antitrust claim was barred by the state immunity doctrine

and that the court could not hear his constitutional claims under its pendent jurisdiction because to do so would defeat the purpose of the abstention doctrine.

On appeal, Hefner makes four distinct arguments: (1) that the district court erred in abstaining from exercising its jurisdiction because the bad faith exceptions applied, (2) that the district court erred in ruling that the state immunity doctrine barred his antitrust claim, (3) that the court erred in failing to entertain his constitutional claim under its pendant jurisdiction, and (4) that the court erred in failing to treat his complaint as a general challenge to the disciplinary scheme under the recent United States Supreme Court decision in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

## I. FEDERAL ABSTENTION

*Younger v. Harris,* 401 U.S. 37, 53, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971) held that a federal court should not interfere with state criminal proceedings unless the proceedings were brought in bad faith, for purposes of harassment, or under other extraordinary circumstances where the danger of irreparable loss is both great and immediate. *Id.* at 45, 91 S.Ct. at 751. *Younger* abstention has been applied as well to quasi-criminal proceedings invested with significant state interests. *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (*Younger* abstention applicable to civil action for temporary custody of abused children); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (*Younger* abstention applicable in state civil action to recover fraudulently obtained welfare benefits); *Huffman v. Pursue Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (*Younger* abstention applicable to civil action to enjoin operation of pornographic movie theater).

In 1982, *Younger* abstention was applied to disciplinary actions brought by state bar associations against attorneys. *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In *Bishop v. State Bar of Texas, supra,* this Circuit held that federal courts should abstain from considering an attorney's claim that his constitutional rights are being violated by an ongoing disciplinary proceeding unless those proceedings are "taken in bad faith or for the purpose to harass" or in retaliation against constitutionally protected conduct. 736 F.2d at 294.

According to Hefner, the bad faith of the defendants was evidenced by the following actions or omissions of the defendants:

(1) that complaints which were simply fee disputes were not referred to a fee dispute committee;

(2) that defendants were responsible for the publication of a newspaper article about his grievance hearing, after a court order sealing the hearing record had been entered;

(3) that the Committee's location of the grievance hearing in Sherman, Texas was intentionally meant to harass and discredit him in his community;

(4) that defendants contacted Hefner's former clients and urged them to file grievances against him;

(5) that defendants escalated their recommended disciplinary action from private reprimand to possible disbarment when Hefner filed a lawsuit to set aside the private reprimand; and

(6) that the period between the time a complaint against him was filed and the time he was notified of the complaint was unreasonably long.

None of the actions or omissions Hefner lists constitutes bad faith or harassment per se, except perhaps the alleged solicitation of former clients to file grievances against him. The district court, however, conducted a hearing on the issue of bad faith and found little or no evidence to support the allegations of bad faith harassment and potential irreparable injury. Further, along with the dearth of evidence on bad faith, persecution, or harassment, Hefner failed to suggest any reason why the

defendants would want to persecute him or why they bore any malice towards him.

*Younger* and its progeny make it obvious that the "bad faith" exception is narrow and should be granted parsimoniously. We are guided by the clearly erroneous standard in our review of the alleged facts that constitute bad faith harassment. The factual circumstances Hefner presented do not show that the defendants acted in bad faith when they brought disciplinary proceedings against him. Accordingly, we find no error in the district court's ruling on this issue.

## II. THE ANTITRUST CLAIM

Hefner next contends that the district court erred in applying the state action doctrine to his antitrust claim. *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), held that the Sherman Antitrust Act was not intended by Congress to apply to actions of the states in their capacity as sovereigns. Thus, under *Parker*, state regulatory activity did not violate the Sherman Antitrust Act. Since *Parker*, the Supreme Court has increasingly refined the definition of state action including what regulatory agencies and political subdivisions constitute "the state" under the doctrine. The state action doctrine has been considered in the context of a state's licensing and disciplining powers over its attorneys. *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984); *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

In *Hoover*, Ronwin was an unsuccessful candidate for admission to the Arizona Bar. He sued the members of the Committee on Examinations and Admissions, claiming that their grading methods and procedures generally, deprived him of due process, violated his right to equal protection of the law, and violated the Sherman Antitrust Act by artificially reducing the number of competing attorneys in the State of Arizona.

At issue in *Hoover* was whether the Arizona plan of determining admissions to the Bar and the Admission Committee members' misuse of the grading formula to arbitrarily restrain competition among lawyers was entitled to antitrust immunity. 104 S.Ct. at 1997. Ronwin alleged that although the Admissions Committee members were state officials in their capacity as members of the Admissions Committee, they acted independently of the Arizona Supreme Court and conspired to restrain trade in the legal profession by imposing artificial limits on the number of new attorneys admitted to the Bar. *Id.* Relying on the antitrust analysis set out in *Bates v. State Bar of Arizona, supra,* the Court held that the actions of the Admissions Commission could not be divorced from the state's Supreme Court exercise of its sovereign power. *Id.*

Although we find it difficult to understand how "the Court's holding in *Bates* applies with *greater force* to the [Admissions] Committee and its actions," *Hoover,* 104 S.Ct. at 1997 (emphasis added),[1] we too

1. The plurality in *Hoover* held that "the critical action in this case was the [Arizona Supreme] court's decision to deny Ronwin admission to the bar." 104 S.Ct. at 2000 n. 30. It reasoned that under Arizona law only the Arizona Supreme Court had the authority to grant or deny admission to the Bar, and the Admissions Committee served merely as the administrative arm of the Court. *Id.*

Writing for the dissent, Justice Stevens criticized the plurality's extension of the state action immunity doctrine to the Admissions Committee and the strained logic it used to achieve this extension. The dissent would require the state to show that the actions of the Committee mem-

bers met the two pronged "clearly articulated" and "actively supervised" test set forth in cases such as *California Liquor Dealers Assn. v. Medical Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 409–20, 98 S.Ct. 1123, 1134–40, 55 L.Ed.2d 364 (1978) (plurality opinion); and *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 790–91, 95 S.Ct. 2004, 2014–15, 44 L.Ed.2d 573 (1975), before granting them antitrust immunity, Justice Stevens further notes that,

Unless the Arizona Supreme Court affirmatively directed petitioners to restrain competition by limiting the number of otherwise qual-

find that *Bates* controls Hefner's antitrust claims. *Bates* is a decision directly on point with the facts and the allegations of this case. *Hoover* can readily be distinguished as involving a frustrated applicant's admission to the Bar. But *Bates*, like the present case, involves a state's disciplinary scheme for its attorneys. In regard to the antitrust challenge, *Bates* held that the challenged restraint is the affirmative command of the Arizona Supreme Court through its rules and disciplinary proceedings and that the restraints are "compelled by the direction of the State acting as a sovereign." *Bates*, 433 U.S. at 359–60 & n. 11, 97 S.Ct. at 2696–97 & n. 11. The same is true of the Texas disciplinary scheme.[2] Moreover, as in *Bates*, the real party in interest here is the Texas Supreme Court, which adopted the disciplinary rules and acts as the ultimate trier of fact and law in the enforcement process. The State Bar of Texas and its Grievance Committees act as agents of the Texas Supreme Court in the ongoing supervision of attorney misconduct. *See Bates*, 433 U.S. at 361, 97 S.Ct. 2697.

Finally, we highlight the fact that neither the State Bar nor the Grievance Committee has the power to revoke Hefner's license to practice law. Only the state courts, upon findings of misconduct under the Rules, can deprive Hefner of this privilege. Granted, these entities could make Hefner's practice of law onerous by harassing him with complaints, but as we explained earlier, the *Younger* bad faith exceptions provide a remedy for that type of situation.

### III. PENDENT JURISDICTION

Hefner urges that we can yet consider his constitutional claims under the court's pendent jurisdiction regardless of the dismissal of the antitrust claim. In its Memorandum Opinion and Order of Dismissal, the district court noted that "[w]hile this would be possible, even in light of the dismissal of the anti-trust (sic) claim, *Silva v. Vowell*, 621 F.2d 640, 644–46 (5th Cir. 1980), [*cert. denied*, 449 U.S. 1125, 101 S.Ct. 941, 67 L.Ed.2d 111 (1981)] it would effectively defeat the precise purpose of the abstention doctrine, *ie.* 'to permit state courts to try state cases free from interference by federal courts.' "

We have long recognized that a federal court retains its authority to hear pendent claims even though the plaintiff's constitutional or federal claims are dismissed or rendered moot. *Silva*, 621 F.2d at 648. Usually, pendent claims involve matters of state law that, standing alone, could not be heard in federal court. But when the state law claims are appended to federal claims and the cause of action derives from a common nucleus of operative fact, a federal court may hear the pendent claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 218, 227–28 (1966); *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).

Hefner relies on language in *Silva*, *supra* (and cases cited therein), to urge that when a pendent claim is federal, but not otherwise justiciable by a federal court, the court may exercise jurisdiction over the pendent federal claim. *Silva*, 621 F.2d at

---

ified lawyers admitted to practice in Arizona, it simply cannot be said that its position is anything more than one of neutrality; *mere authorization for anti-competitive conduct is wholly insufficient to satisfy the test for antitrust immunity.* [Citing *Medical, supra,* and *City of Lafayette, supra.*] No affirmative decision of the Arizona Supreme Court to restrain competition by limiting the number of qualified persons admitted to the bar is disclosed on the present record. The alleged conspiracy to introduce a factor other than competence into the bar examination process is not the product of a clearly articulated and af-

firmatively expressed state policy and hence does not qualify for antitrust immunity.
104 S.Ct. at 2009–10 (Stevens J., dissenting) (emphasis added). We do not need to rely wholly on *Hoover* to hold as we do.

2. *See generally* Tex.Rev.Civ.Stat.Crim. art. 320a–1 (Vernon Supp.1985); Supreme Court of Texas, Rules governing the State Bar of Texas, art. X, (Discipline and Suspension of Members), § 9 (Code of Professional Responsibility), 1A Vernon's Ann.Civ.Stat. tit. 14 App. (Vernon 1973 and Vernon Supp.1985).

648. But in view of the policies underlying the abstention doctrine the district court was compelled to reject this argument. We agree with the district court's ruling, especially when we consider the subject matter of this lawsuit, attorney disciplinary proceedings, and the deference federal courts have afforded to the states in the regulation of their respective Bars. *See generally District of Columbia Court of Appeals v. Feldman, supra.* It would defeat the precise purpose of the abstention doctrine to assume pendent jurisdiction over Hefner's constitutional claims.

## IV. THE GENERAL CONSTITUTIONAL ATTACK

 We recognize that *Feldman,* while relegating constitutional claims that are "inextricably intertwined" with the state's regulation of its attorneys to the state courts, 460 U.S. at 482–83 n. 16, 103 S.Ct. at 1315 n. 16, continues to allow United States District Courts to exercise jurisdiction over "general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state-court judgment in a particular case." 460 U.S. at 486, 103 S.Ct. at 1317.

We have had occasion to apply *Feldman* to similar facts once before. In *Howell v. State Bar of Texas,* 674 F.2d 1027 (5th Cir.1982) we reversed and remanded the judgment of the district court that it had no subject matter jurisdiction to review a disciplinary case. The United States Supreme Court vacated our holding and remanded the case for reconsideration in light of *Feldman,* which had recently been decided. *Howell,* 460 U.S. 1065, 103 S.Ct. 1515, 75 L.Ed.2d 942 (1983). On remand, we partially reinstituted our prior decision to remand to the district court. *Howell,* 710 F.2d

1075 (5th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984). *Feldman* did not preclude general constitutional challenges to a state's disciplinary scheme. We found that Howell's original complaint made out such a challenge, 710 F.2d at 1077, and remanded to the district court for further proceedings. *Id.* at 1078. We have been unable to ascertain what happened to *Howell* upon remand, but no one has cited to any authority, nor have we been able to find any authority, upholding the constitutionality of the disciplinary scheme promulgated by the Texas Supreme Court for Texas lawyers.

■ Even if the district court erred in abstaining from reaching the general constitutional issue, an issue that is not necessary to decide in this case, the record is conclusive that the proper parties to make a broad constitutional attack to the disciplinary scheme in Texas were not before the district court, since the Texas Supreme Court and the State Bar of Texas were not parties to the lawsuit.[3] Accordingly, we affirm the decision of the district court.

AFFIRMED.

---

**3.** Hefner's original complaint named Ivan Alexander Jr., the District 1–A Grievance Committee Chairperson and the State Bar of Texas as defendants. Hefner subsequently amended his complaint by dropping the State Bar of Texas as a defendant and adding the members of Grievance Committee 1–A, the members of the Board of Directors of the State Bar of Texas as well as the Executive Director and two Texas Supreme Court Justices who serve as liaisons to the State Bar. At no time has Hefner named the Texas Supreme Court, which promulgates the rules for disciplinary proceedings, as a defendant in this cause.