### C. Vernon MASON, Plaintiff–Appellant,

v.

### DEPARTMENTAL DISCIPLINARY COMMITTEE, APPELLATE DIVISION OF THE SUPREME COURT OF THE STATE OF NEW YORK, FIRST JUDICIAL DEPARTMENT: Office of Chief Counsel, Defendants–Appellees.

**No. 545, Docket 89–7918.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 4, 1989.

Decided Jan. 16, 1990.

---

Stephanie Y. Moore, New York City (William M. Kunstler, Ronald L. Kuby, New York City, on the brief), for plaintiff-appellant.

James G. Greilsheimer, New York City (Alan M. Klinger, Joseph J. Giamboi, Stroock & Stroock & Lavan, New York City, on the brief), for defendants-appellees.

Before NEWMAN, PRATT and MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

C. Vernon Mason, a lawyer, appeals from the August 24, 1989, judgment of the District Court for the Southern District of New York (John E. Sprizzo, Judge) dismissing his complaint, which sought to enjoin an investigation of him by a state court disciplinary committee looking into possible violations of the Code of Professional Responsibility. The District Court concluded that the complaint failed to allege circumstances sufficient to warrant an exception to the abstention doctrine as enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and, more particularly in the context of lawyer disciplinary matters, in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). We affirm.

## Background

In June 1988, the Departmental Disciplinary Committee of the New York Supreme Court, First Judicial Department ("the Committee"), which is the appellee here, began an investigation of Mason on its own initiative, acting pursuant to N.Y. Rules of Court § 605.6(a) (McKinney 1989). The Committee acted in response to numerous inquiries and allegations it had received concerning Mason's conduct in connection with his representation of Tawana Brawley. Brawley had become the center of a controversy arising out of her claim that a group of men had abducted and raped her. In the course of the controversy, the Governor of New York appointed the Attorney General, Robert Abrams, as a special prosecutor to investigate Brawley's claim. Abrams convened a special grand jury, which sought unsuccessfully to obtain testimony from Brawley and her mother. Ultimately the Grand Jury issued a report concluding that Brawley's claim was without basis in fact.

During the course of the Grand Jury's inquiry, the Committee had notified Abrams that it had begun an investigation of Mason and had requested that relevant materials be produced after the Grand Jury completed its work. When that occurred, Abrams announced that he would request the appropriate disciplinary committees to consider disciplinary proceedings against Brawley's advisers, including Mason. In an October 6, 1988, letter to the Committee, Abrams detailed the respects in which he believed Mason had violated the Code of Professional Responsibility. In an October 14, 1988, letter to Mason, the Committee informed him of its investigation, enclosed a copy of Abrams' October 6 letter, and asked him to respond by November 4 to the allegations of professional misconduct in Abrams' letter.

Lawyers purporting to represent Mason twice asked the Committee for an extension of time to reply; both requests were denied. One of these lawyers submitted a response to the Committee on November 4. Thereafter new counsel for Mason wrote the Committee to ask for a return of the

November 4 response; this request was denied. In subsequent correspondence, the Committee informed Mason that one of his lawyers, Stephanie Y. Moore, Esq., could not represent him as she was not admitted to practice in New York.

Mason then began a series of actions in state court. On December 5, 1988, he moved in the Supreme Court for disclosure of the Grand Jury minutes; this motion was denied. On December 8, the Committee again told Mason that he could not withdraw his response, but gave him until January 9, 1989, to file a supplemental response. On December 20, 1988, Mason began an Article 78 proceeding in the Appellate Division, seeking an order requiring the Committee to grant him a further extension and to recognize Moore as his lawyer. On January 5, 1989, Mason began a second Article 78 proceeding, seeking an order directing the Committee to cease its investigation and to disclose communications concerning the investigation between Abrams and the Committee's then chief counsel, Michael A. Gentile. On February 22, the Appellate Division ruled in both proceedings. The Court granted Mason 60 additional days to respond to the Committee, allowed Moore to appear for Mason upon filing a proper application for *pro hac vice* admission, and dismissed the second Article 78 proceeding. Leave to appeal to the Court of Appeals was denied.

Prior to the extended date for filing his response with the Committee, Mason filed the instant lawsuit in the District Court. The parties stipulated to defer Mason's response until disposition by the District Court. The federal court complaint asserted, among other things, that the action of the Attorney General in disclosing his allegations of unethical conduct by Mason and the Committee's "solicitation" and "adoption" of the Attorney General's "complaint" deprived Mason of his rights to due process of law and impaired his First Amendment right to freedom of speech.

Since Mason's claim for federal court intervention relies on developments concerning the resignation of the Committee's chief counsel, those developments must be elaborated. On January 23, 1989, Gentile resigned at the request of the Honorable Francis T. Murphy, Presiding Justice of the Appellate Division, First Department. On that date Justice Murphy released a report explaining why he had requested the resignation. The report mentioned deficiencies in Gentile's administration of various matters in his office, including the Mason investigation. On February 16, the Honorable Sol Wachtler, Chief Judge of the New York Court of Appeals, directed the First Department to make an inquiry concerning the Gentile resignation and "promptly do whatever is necessary to maintain the dignity, respect and integrity" of the Court and the Committee. N.Y. Law Journal, Feb. 16, 1989, at 1, col. 3. Justice Murphy appointed four justices of the Appellate Division, First Department, to conduct the inquiry. All twelve of the associate justices of the First Department participated in the questioning of witnesses during the inquiry. On April 28, the Appellate Division released a report, concurred in by all but one of its members. Among other things, the report concluded that no member of the Court had participated in the investigation of any disciplinary matter. Chief Judge Wachtler, on behalf of the Court of Appeals, issued a letter to the Appellate Division, expressing satisfaction that the objectives of the inquiry process had been met.

The District Court denied Mason's motion for a preliminary injunction and dismissed the complaint on abstention grounds. The Court heard oral argument but denied a request for an evidentiary hearing. A panel of this Court granted an expedited appeal and stayed the Committee's efforts to obtain further information from Mason. After receiving the parties' briefs and hearing oral argument, this panel vacated the stay.

### Discussion

Appellant acknowledges the pertinence of *Younger* abstention to attorney disciplinary proceedings, *see Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. at 432–35, 102 S.Ct. at 2521–22, but contends that his complaint

sufficiently alleges "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate," *id.* at 435, 102 S.Ct. at 2523. He contends that he lacks an effective opportunity to assert his constitutional claims because the Committee is biased and is "jurisdictionally incompetent" to adjudicate his allegations of official misconduct. He also contends that he has no opportunity for effective judicial review within the state court system.

Mason's allegations of bias do not set forth circumstances that warrant federal court intervention. *See Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Contrary to his assertions, the Committee is not disabled from proceeding because it sought evidence of his possibly unethical conduct from the Attorney General nor because the Attorney General aired his allegations against Mason. Moreover, Mason mischaracterizes the situation in contending, as evidence of bias, that the Committee has "adopted" the Attorney General's "complaint." Thus far, the Committee has not filed any charges against Mason. *See* N.Y. Rules of Court § 605.12. It is conducting an inquiry to determine whether to file charges. In doing so, the Committee is entitled to seek evidence that the Attorney General may have. The Committee does not disable itself from proceeding by requesting a response from Mason as to the matters raised by the Attorney General nor by alerting Mason to the general scope of the requested response through the device of sending him the allegations made by the Attorney General.

Nor is bias shown by the allegations concerning the resignation of Gentile, the role of Justice Murphy in such resignation, or any state inquiry into such matters. It is wholly speculative for Mason to conclude that the members of the Committee or its current staff have prejudged him, or are incapable of impartially deciding whether to initiate formal proceedings and, in that event, of conducting them fairly. Finally, no sufficient claim of bias is shown by the fact that the Committee has rejected Mason's claim of bias, nor by the state courts' refusal to halt the Committee's efforts to ascertain whether grounds exist for formal charges. Obviously state forums do not disable themselves from investigating and adjudicating matters simply by disagreeing with accusations made against them.

Mason's further point that the Committee is unable to adjudicate many of his allegations is partly irrelevant and partly mistaken. To the extent that he faults the Committee because it will not adjudicate his allegations of misconduct by other persons, his point is irrelevant to the propriety of the Committee's inquiry into the allegations against Mason. The Committee is not disabled from proceeding because it declines to make the Mason inquiry an occasion for assessing the lawfulness of others. To the extent that Mason has legitimate defenses to any charges that may be brought against him, he will have an opportunity to assert his defenses in appropriate New York forums. *See Turco v. Monroe County Bar Ass'n,* 554 F.2d 515, 519 (2d Cir.), *cert. denied,* 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 95 (1977); *Anonymous v. Association of the Bar,* 515 F.2d 427, 432 (2d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Erdmann v. Stevens,* 458 F.2d 1205, 1211–12 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972); *Matter of Capoccia,* 59 N.Y.2d 549, 553, 466 N.Y.S.2d 268, 269, 453 N.E.2d 497, 498 (1983); *Matter of Anonymous Attorneys,* 41 N.Y.2d 506, 509, 393 N.Y.S.2d 961, 964, 362 N.E.2d 592, 595 (1977).

Mason's assertion of the futility of judicial review through the state court system has two components. His first point echoes his claim of bias by asserting that state court review is futile because he has thus far not prevailed in his effort to halt the Committee's inquiry. In fact, his recourse to the state courts has demonstrated that those courts are fully prepared to rule favorably on his meritorious assertions. Their refusal to halt the inquiry at its incipient stage provides no basis for believing that they will be reluctant to entertain any legitimate objections Mason may have in the event that disciplinary sanctions are improperly imposed.

Mason's second point is that state law does not permit judicial review of one possible step the Committee might take—the issuance of a letter of caution. *See* N.Y. Rules of Court §§ 605.6(e)(3), 605.7, 605.8. He relies on *Parker v. Commonwealth of Kentucky Board of Dentistry,* 818 F.2d 504 (6th Cir.1987), for the proposition that *Younger* abstention is not warranted where the opportunity for judicial review "is contingent upon the type of disciplinary action taken." *Id.* at 509. *Parker* concerned an absence of judicial review of all the available disciplinary sanctions except the sanction of license revocation. By contrast, under New York's procedures, all actions characterized as disciplinary are subject to judicial review. A letter of caution "does not constitute discipline by the Committee." N.Y. Rules of Court § 605.8(b)(2)(ii). Of course, a state may not employ labeling to insulate from judicial scrutiny adverse action that impairs constitutionally protected rights. If it should develop that a letter of caution is issued under circumstances where such action impairs Mason's federal rights, we are not foreclosing federal court scrutiny. But the possibility of such an eventuality is too speculative to warrant a relaxation of *Younger* abstention requirements.

In sum, Mason has alleged no circumstances that show that the Committee or the state courts are proceeding against him in bad faith or harassing him, nor has he alleged any other valid grounds for an exception to *Younger* abstention. The District Court was entirely correct in its conclusion that Mason's complaint did not require an evidentiary hearing and that the complaint should be dismissed.

The judgment of the District Court is affirmed.