Sanford J. BERGER, et al., Plaintiffs,

v.

The CUYAHOGA COUNTY BAR
ASSOCIATION, et al.,
Defendants.

No. 1:90 CV 119.

United States District Court,
N.D. Ohio, E.D.

Sept. 19, 1991.

Robert M. Fertel, Sanford J. Berger, Berger & Fertel, Cleveland, Ohio, for plaintiffs.

David W. Mellott, Benesch, Friedlander, Coplan & Aronoff, Kenneth A. Bravo, Cleveland, Ohio, Ellen S. Mandell, Beachwood, Ohio, Loren L. Braverman, Shawn H. Nau, Columbus, Ohio, for defendants.

Daniel Gurish, pro se.

Thomas L. Meros, pro se.

## ORDER

BATTISTI, District Judge.

Before the Court are Plaintiffs' motion for injunctive relief, Defendants' motions to dismiss, Plaintiffs' motions to add new parties, for an expeditious ruling, and to file additional pleadings. For the reasons set forth below, the Court grants Defendants' motions to dismiss. Plaintiffs' miscellaneous motions are moot.

## FACTS

This case arises out of a disciplinary proceeding brought by defendant Cuyahoga County Bar Association, involving Plaintiffs, attorneys Sanford J. Berger and Robert M. Fertel. The disciplinary proceeding in turn resulted from a dispute over legal fees between Plaintiffs and their former client, Daniel Gurish.

Plaintiffs seek to have the Court enjoin the Bar Association from going forward with its disciplinary proceeding. Plaintiffs also seek to have the court enjoin numerous other defendants, among them: The Grievance Committee of the Cuyahoga County Bar Association; Lawrence Turbow, an investigator for the Grievance Committee; J. Warren Bettis, Disciplinary Counsel for the Bar Association; the Board of Commissioners on Grievances and Discipline of the Bar Association; and the Supreme Court of Ohio. (Mr. Gurish and his new counsel, Thomas L. Meros, were defendants at an earlier point in the litigation. Plaintiffs have moved to add more Bar Association officials and other individuals involved in the disciplinary proceedings, among them: Marshall Wolf, Ellen S. Mandell, Frederick L. Oremus, Thomas G. Knoll, Charles E. Brown, Ohmer O. Crowell, and Howard R. Besser. As already mentioned, given the disposition of the case, Plaintiffs' motion is moot.)

From 1983 to 1989, Plaintiffs Berger and Fertel represented their client in a federal civil rights action. They were successful in two appeals before the Sixth Circuit.

On July 28, 1988, the matter went to trial before a jury, which five days later returned a verdict for the plaintiff of $100,-000. The court then entered judgment in that amount, along with reasonable attorney fees and costs. Berger and Fertel subsequently filed a motion for their fees. During hearings on the issue of attorney fees, the parties began negotiations to bring the matter to a conclusion.

On February 9, 1989, the defendants offered a settlement of $130,000, including attorney fees, which Berger and Fertel rejected. Their client, however, wished to settle the case. As was the client's right, he directed Berger and Fertel to accept the offer.

Berger and Fertel then asserted that they were entitled to receive fees of $80,-000, while their client was to get the remainder of $50,000. The client was unsatisfied with this division and retained new counsel.

The client's new counsel attempted to gain a review of the fees before the trial court that had tried the underlying civil

rights action. After his motion was dismissed for lack of jurisdiction, the settlement having been entered already, he filed suit in state court and also filed a complaint with the Bar Association. Berger and Fertel refused to submit this matter to arbitration, as requested by the Bar Association.

On November 20, 1989, the Bar Association Grievance Committee held an investigative hearing. An estimated fifty (50) lawyers were present, some of whom had been opposing counsel in previous cases litigated by Berger and Fertel, or were involved in other disputes with them. The Grievance Committee voted to refer the investigation to a Trial Committee. Although Berger and Fertel and their client later settled their disagreement, the Bar Association investigation is still pending.

### DISCUSSION

As a preliminary matter, the Court notes it does not reach the questions of whether Plaintiff Berger and Fertel's attorney fees were reasonable or pursuant to an agreement. For the purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations taken as true. *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1065 (6th Cir.1984).

In their motion for attorney fees, Plaintiffs requested $191,000. In the present complaint, they allege that their client had agreed to not only a contingent fee arrangement, whereby they would receive half of any judgment for damages, but also fees for their appellate work plus any additional attorney fees which they would have received under federal civil rights statutes. Thus, the $80,000 apparently represents half of the jury verdict ($50,000) in addition to the difference between the settlement offer, which included attorney fees, and the verdict ($30,000).

■ Regardless, this Court must abstain from interfering with the ongoing Bar Association investigation. It is by now well-established that federal courts should not stay or enjoin pending state court prosecutions. *Younger v. Harris*, 401 U.S. 37, 91

S.Ct. 746, 27 L.Ed.2d 669 (1971). Instead, they should abstain because of important federalism concerns in respecting state institutions' ability "to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750.

■ Specifically, the Supreme Court has extended the doctrine of *Younger* abstention to insulate from federal review state bar association disciplinary proceedings. *Middlesex Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Indeed, the Court set a high standard of deference to state courts. "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Id.*, quoted in *Watts v. Burkhart*, 854 F.2d 839, 845 (6th Cir.1988).

In *Middlesex*, the plaintiff was an attorney who had made remarks about a judge's abilities and racial attitudes during a criminal trial. He challenged a New Jersey Bar Association ethics inquiry into his behavior. The Supreme Court determined that *Younger* abstention was appropriate under three criteria.

First, "the notion of comity" between federal and state courts applied to the proceedings because they were judicial in nature, having been established under the state constitution and state supreme court rules. *Middlesex*, 457 U.S. at 431–34, 102 S.Ct. at 2520–22.

Second, the proceedings implicated important state interests in assuring the ethical and professional conduct of the legal profession. The Court observed that "[s]tates traditionally have exercised extensive control over the professional conduct of attorneys." *Id.* at 434, 102 S.Ct. at 2522.

Third, the proceedings provided adequate opportunities for the accused to raise constitutional challenges. *Id.* at 435, 102 S.Ct. at 2523. The procedural posture was unusual though: it was only after the attorneys began federal litigation that the state supreme court considered constitutional ob-

jections to the bar proceedings. *Id.* at 436, 102 S.Ct. at 2523.

The *Middlesex* decision is on point and dispositive. Like the New Jersey Bar Association disciplinary proceedings, the Ohio Bar Association disciplinary proceedings have been established under the state constitution and state supreme court rules. *See* Ohio Const. Art. IV, § 2(B)(1)(g), § 5(B); Ohio S.Ct. Rule V. The Ohio Constitution provides that, "[t]he supreme court ... shall make rules governing the admission to the practice of law and discipline of persons so admitted." Ohio Const. Art. IV, § 5(B). Under its authority, the Ohio Supreme Court has authorized bar associations like the present Defendant to initiate grievance proceedings. Ohio S.Ct. Rule V(6)(c).

The states of New Jersey and Ohio have identical interests in overseeing the professional conduct of members of their respective bars.

Moreover, Plaintiffs bear the burden of showing "that state procedural law bar[s] presentation of [their] claims." *Federal Express v. Tennessee Public Service Commission,* 925 F.2d 962, 970 (6th Cir.1991) (internal quotes omitted). They have not cited state laws or regulations that preclude the constitutional challenges which they would like to present. Plaintiffs will be able to raise their arguments within the disciplinary proceedings, especially if they reach disposition before the Ohio Supreme Court. Ohio S.Ct. Rule V(20). Unlike the *Middlesex* situation, attorneys facing disciplinary actions in this state do not need to resort to federal litigation to ensure that they will have an opportunity to raise their constitutional claims.

Although the Sixth Circuit has not yet considered abstention under these exact circumstances, other circuits have held that abstention is appropriate in the context of a bar association disciplinary proceeding. The fact patterns in those cases and the present case are virtually indistinguishable. In each, plaintiffs were attorneys who were subject to bar association disciplinary proceedings; they tried to have a federal district court enjoin the bar association. *See,*

*e.g., Mason v. Departmental Disciplinary Committee,* 894 F.2d 512 (2nd Cir.1990), *cert. denied* — U.S. ——, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990); *Richardson v. Florida State Bar,* 1990–2 Trade Cas. (CCH) P 69,111, 1990 WL 116727 (D.D.C.1990). *See also Hefner v. Alexander,* 779 F.2d 277 (5th Cir.1985); *Director of Lawyers Professional Responsibility Board v. Perl,* 752 F.2d 352 (8th Cir.1985).

Plaintiffs have not alleged that the Ohio Supreme Court or the Bar Association have adopted rules dramatically different than the other state supreme courts and Bar Associations involved in previous cases of abstention.

Instead, their Hydra-like arguments repeat in many different ways the same basic proposition. They argue that the Bar Association lacks jurisdiction over their conduct because federal civil rights statutes contain provisions on attorney fees, which they contend pre-empt state bar association regulations on the subject. Alternatively, they argue that their own status as "private attorneys general" protects their fee arrangements from Bar Association review.

The Sixth Circuit has rejected similar pre-emption arguments against abstention. Simply put, it has stated that a potential pre-emption issue does not alter abstention analysis. *Federal Express,* 925 F.2d 962; *CSXT, Inc. v. Pitz,* 883 F.2d 468 (6th Cir. 1989), *cert. denied* — U.S. ——, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990). In both decisions, the pre-emption argument was stronger than it is here, as federal regulatory schemes were present.

Plaintiffs have raised interesting and important issues. But their arguments should be raised within the Bar Association proceedings or addressed to the Ohio Supreme Court. They have not pointed out any federal statute or regulation of attorney fees in civil rights actions that expressly or impliedly pre-empts state bar association standards. Furthermore, they have not shown any Congressional intention to pre-empt state actions in this area.

To the contrary, defendants persuasively argue that the federal civil rights statutes

are not primarily concerned with attorney fees. Furthermore, to the extent that the statutes address attorney fees and "private attorneys general," they make it clear that the client and the vindication of his constitutional rights are the paramount concerns. *See Evans v. Jeff D.*, 475 U.S. 717, 730–32, 106 S.Ct. 1531, 1538–40, 89 L.Ed.2d 747 (1986) (discussing fees). A proper concern for attorney fees does not conflict with the policies embodied in federal civil rights statutes.

In the disciplinary proceedings at issue here, the Bar Association appears to be investigating the agreement between Plaintiffs and their client regarding fees, rather than any potential award of attorney fees under civil rights statutes. And again, it is important to note that Plaintiffs have had and will continue to have opportunities to present their arguments within the course of Bar Association proceedings.

■ Plaintiffs also allege that the *Younger* exceptions are applicable. Their strongest argument for an exception is essentially that bad faith or bias has infected the bar association disciplinary proceedings. Taking the complaint as true, it does not allege facts sufficient to constitute bad faith or bias, as they are defined for abstention analysis.

The standard for evaluating claims of bad faith and bias is difficult to meet. As another court that abstained from interfering with a bar proceeding explained, "*Younger* and its progeny make it obvious that the 'bad faith' exception is narrow and should be granted parsimoniously." *Hefner*, 779 F.2d at 280. For example, New York attorney C. Vernon Mason, whose representation of Tawana Brawley in a much-publicized case led to a state bar investigation of his conduct, was unable to "set forth circumstances that warrant federal court intervention." *Mason*, 894 F.2d at 515. His allegations, in a case with highly charged racial overtones, were far more serious than the ones raised here.

Here, Plaintiffs allege bad faith and bias because one of three investigators assigned to their case before the Bar Association also serves as opposing counsel in unrelated litigation brought by Plaintiffs. Additionally, they allege selective prosecution because another colleague, who had a fee dispute with a client, was not subject to Bar Association investigation.

Although the Bar Association might well avoid assigning investigators to cases where they have a possible conflict of interest, Plaintiffs' allegations fall short of the bad faith standard. The Bar Association's failure to conduct itself in an ideal manner, while regrettable, does not overcome the strong policies of *Younger* abstention.

Plaintiffs refer to correspondence with the Bar Association and meetings that occurred as part of the disciplinary proceedings as revealing a "vindictive, retaliatory attitude on the part of the Bar Ass[ociation]." Plaintiffs' Motions for Preliminary and Permanent Injunctions at 30–33. Plaintiffs' list of events actually reveals nothing but the activities ordinarily expected in a Bar Association proceeding. If the Bar Association had neglected to correspond with Plaintiffs or refused to meet with them, that would have been more telling.

In contrast to this case, the rare instances of federal courts applying a *Younger* exception have involved allegations of egregious bad faith and bias. The single case where a bar association investigation fell within the bad faith exception involved a series of bar actions over the course of several years. *Bishop v. State Bar of Texas*, 736 F.2d 292 (5th Cir.1984). Even there, the court dismissed the plaintiff's broad attacks on the bar procedures, allowing him to proceed only insofar as he could demonstrate a pattern of harassment. *Id.* at 294. Despite his efforts at a full hearing, he was not able to demonstrate any such harassment. *Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir.1986).

In an extraordinary case where a federal district court did enjoin a state criminal prosecution of an attorney, his allegations "painted a picture of pervasive racism and discriminatory treatment of blacks in the [ ] court system" as well as political motivations. *Lewellen v. Raff*, 843 F.2d 1103, 1110 (8th Cir.1988), *cert. denied* 489 U.S.

1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989). The attorney also raised allegations of illegal surveillance tactics on the part of defendants. *Id.* at 1114.

 Finally, Plaintiffs raise antitrust claims. They are correct in asserting that the Bar Association does not by virtue of its status enjoy immunity from antitrust laws. *See Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975). Plaintiffs challenge Bar Association proceedings which have been established under the authority of the Ohio Supreme Court. Consequently, Plaintiffs' antitrust claims must be evaluated under the "state action doctrine."

The state action doctrine was created in recognition of the fact that federal antitrust laws were not meant to preclude state policies and regulation. *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). To gain state action immunity: (1) the state must clearly articulate and affirmatively express that the challenged restraint is its policy; (2) the state must actively supervise the challenged conduct. *California Retail Liquor Dealers v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980).

As discussed, *supra,* the Ohio Supreme Court has articulated a policy of bar association investigations. The first prong of the *Midcal* test is satisfied.

The Supreme Court recently held that a physician peer review process did not meet the requirements of the state action doctrine, but the Court reserved the question of whether judicial review of private conduct could ever satisfy the second prong of the *Midcal* test, "active supervision." *Patrick v. Burget,* 486 U.S. 94, 104, 108 S.Ct. 1658, 1665, 100 L.Ed.2d 83 (1988). In the present situation, other courts have found that state supreme courts provide sufficient supervision over bar association proceedings. *See Richardson,* 1990–2 Trade Cas. (CCH) P 69,111; *Hefner,* 779 F.2d 277. *See generally Hoover v. Ronwin,* 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984) (state action immunity found for bar admission requirements).

While the Ohio Supreme Court does not play a large role at this juncture in the Bar Association investigation of Plaintiffs, it ultimately determines if and what sanctions are necessary. Ohio S.Ct. Rule (V)(22). This Court finds that the Ohio Supreme Court does supervise the Bar Association.

The Court finds it unnecessary to consider the Eleventh Amendment and immunity issues presented by Defendants.

Therefore, Defendants' motions to dismiss are GRANTED. IT IS SO ORDERED.