**Christopher JORDAN**

v.

**Steven E. REIS, District Attorney, for Matagorda County, Texas**

No. Civ.A. G–01–389.

United States District Court, S.D. Texas, Galveston Division.

Oct. 3, 2001.

Lionel Mills, Attorney at Law, Houston, TX, for Christopher Jordan, plaintiff.

Jill Cornelius, Matagorda County Attorney's Office, Bay City, TX, for Steven E. Reis, District Attorney of Matagorda County, Texas, defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

KENT, District Judge.

Plaintiff seeks to enjoin a state court criminal proceeding allegedly brought against him in bad faith for the purposes of harassing, retaliating against, and deterring Plaintiff from exercising his First Amendment right to bring a civil suit. Now before the Court is Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted. For the reasons stated below, Defendants' Motion is **DENIED**.

### I. BACKGROUND

Plaintiff Christopher Jordan seeks injunctive relief from the continued prosecution of a state court criminal proceeding brought against him in the 130th Judicial District Court of Matagorda County, Texas,[1] pursuant to 42 U.S.C §§ 1983 and 1985, and 28 U.S.C. § 1343(a)(4). Specifically, Jordan alleges that Defendant Steven E. Reis, District Attorney for Matagorda County, acted individually and in concert with other officials to initiate criminal proceedings against Plaintiff in a bad faith attempt to harass, retaliate against, and deter Plaintiff from vindicating his civil right to be free from discrimination in the workplace.

The following facts are relevant to the Court's consideration of Defendant's Motion to Dismiss. Plaintiff was employed as a deputy sheriff with the Matagorda County Sheriff's Department from 1995 until his termination on April 21, 1999. Approximately one month prior to being terminated, Jordan filed a timely employment discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging that his employer had discriminated against him on the basis of race in direct violation of Title VII of the Civil Rights Act of 1964.[2] While the EEOC investigation was pending, Jordan was terminated, ostensibly for illegally providing alcohol to inmates he was guarding. Jordan claims, however, that his termination was a retaliatory act aimed at punishing him for opposing his employer's discriminatory employment practices. Jordan was charged with possession of a prohibited substance in a correctional facility, a third degree felony offense punishable under Section 38.11 of the Texas Penal Code,[3] and indicted on this charge by a Matagorda County grand jury on September 5, 1999. Jordan filed suit in this Court on June 22, 2001, seeking to enjoin the

---

1. According to Plaintiff's complaint, the criminal case pending against Jordan is styled *State of Texas v. Christopher Jordan*, Criminal Cause Number 99–J–209.

2. Based on Jordan's charge, the EEOC brought a lawsuit against Matagorda County and Matagorda County Sheriff James D. Mitchell on January 9, 2001 in this Court (Civil Cause Number 01–010). In its Complaint, the EEOC alleges that the defendants violated Title VII's prohibition against racial discrimination in the workplace by subjecting Jordan to disparate discipline (including his ultimate discharge), and failing to take appropriate actions to remedy the adverse effects of such discrimination. Jordan has since intervened as a Plaintiff in that lawsuit.

3. Section 38.11 of the Texas Penal Code governs the use and distribution of prohibited substances in a correctional facility. Jordan was charged with violating subsection (a) of this section, which reads: "A person commits an offense if the person provides an alcoholic beverage, controlled substance, or dangerous drug to an inmate of a correctional facility, except on the prescription of a physician." Tex.Penal Code § 38.11(a).

state court proceeding lodged against him. Defendant responded with its Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted, to which the Court now turns.[4]

## II. ANALYSIS

At the outset, the Court is compelled to comment on the seriously inadequate briefing of the relevant facts and law submitted by both parties in this lawsuit. The dispositive issue presented in Defendant's Motion to Dismiss clearly involves the application of the Supreme Court's *Younger* abstention doctrine, yet Plaintiff's counsel fails to address one single substantive aspect of *Younger*, and neither party even attempts to cite to, much less discern, the extensive Fifth Circuit line of cases directly on point and extremely relevant to this case. Perhaps even more detrimental to the Court's ability to adjudicate this cause of action is Counsels' failure to provide crucial facts. At this point, the Court has absolutely no idea as to the present stage of the state court criminal proceedings pending against Plaintiff, or whether or not these proceedings have already resulted in a final conviction. The Court cannot undertake independent investigation and simply cannot reach fair and informed judgments based on these types of briefs. The Court strongly admonishes both parties to sharpen their efforts considerably in any future submissions to this Court, or face appropriate sanctions. The Court particularly warns Plaintiff's counsel that this case cannot and will not survive without substantial improvement in the development of the relevant facts and arguments. Plaintiff's response to Defendant's Motion to Dismiss was incoherent at many

junctures, in part due to the correction fluid haphazardly placed on several portions of the document, rendering the "doctored" sentences incomprehensible. This type of briefing is unacceptable and simply must be improved. Notwithstanding the inadequacy of the information before it, the Court **DENIES** Defendant's Motion to Dismiss, taking into due consideration the very early stage of this lawsuit, and viewing the minimal factual allegations before it in a light most favorable to Plaintiff.

### A. Legal Standard

■ Defendant moves to dismiss this suit pursuant to Fed.R.Civ.P. 12(b)(6). A party is entitled to dismissal under Fed.R.Civ.P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. When considering a 12(b)(6) motion, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

■ Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Home Builders Ass'n of Miss. ., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998) (applying the standard in the context of Rule 12(b)(1)); *Home Capital Collateral, Inc. v. FDIC,* 96 F.3d

---

4. Defendant filed this Motion to Dismiss on August 13, 2001. Although Plaintiff's Response was originally due on September 2, 2001, the Court's staff communicated with

counsel and conferred an oral extension of this deadline; Plaintiff thereafter filed a "timely" Response on September 17, 2001.

760, 764 (5th Cir.1996); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir .1994) (both applying the standard in the context of Rule 12(b)(6)). The Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *See Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988).

## B. *Younger* Abstention

Defendant's Motion to Dismiss turns on the application of the *Younger* abstention doctrine. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court should not enjoin a state criminal prosecution except under extraordinary circumstances, where necessary to prevent irreparable injury that is both immediate and great. *Id.*, 401 U.S. at 41, 43–46, 91 S.Ct. at 749–51. In making this determination, the court relied on the traditional rationales underpinning the longstanding public policy against federal court interference with state court proceedings, including "the basic doctrine of equity jurisprudence that courts of equity should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.*, 401 U.S. at 43–44, 91 S.Ct. at 750. Furthermore, the *Younger* court explained that the notion of comity or a proper respect for state functions, known as "Our Federalism," precludes courts of equity from interfering with criminal prosecutions. *Id.*, 401 U.S. at 44, 91 S.Ct. at 750.

▮ Although the *Younger* court circumscribed narrowly the equitable restraint powers of federal courts, it also acknowledged that abstention would not be appropriate in the extraordinary circumstance where intervention is necessary to prevent an irreparable injury that is both immediate and great. Among the various circumstances courts have classified as exceptions to the *Younger* doctrine, it is well established that bad faith prosecutions brought for purposes of harassment or retaliation justify federal interference in pending state court criminal proceedings. *See, e.g., id.*, 401 U.S. at 54, 91 S.Ct. at 755 (indicating that "bad faith, harassment" would merit equitable relief); *Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1971) (permitting federal injunctive relief "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction"); *Dombrowski v. Pfister*, 380 U.S. 479, 482, 85 S.Ct. 1116, 1118–1119, 14 L.Ed.2d 22 (1965) (deeming injunctive relief appropriate where enforcement of a subversive activities statute was intended to discourage plaintiffs from vindicating the constitutional rights of black citizens). This well-carved exception derives from the notion that a state does not have a legitimate interest in pursuing bad faith prosecutions, thereby avoiding the comity rationale espoused in *Younger*. *Wilson v. Thompson*, 593 F.2d 1375, 1382–83 (5th Cir.1979).

▮ In construing *Younger* and its progeny, the Fifth Circuit has directly equated a showing of bad faith or harassment with a showing of irreparable injury. *See, e.g., id.* at 1381–82; *Shaw v. Garrison*, 467 F.2d 113, 120 (5th Cir.1972). Although recognizing that the bad faith exception is a narrow one that should be granted parsimoniously, *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir.1985), the Fifth Circuit has upheld injunctive relief against state court criminal proceedings on numerous occasions where bad faith prosecution has been alleged. *See, e.g., Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 87–88 (5th Cir.1992); *Fitzgerald v. Peek*, 636 F.2d

943, 945 (5th Cir.1981); *Shaw*, 467 F.2d at 122. Of particular relevance to the instant suit, the Fifth Circuit in *Wilson v. Thompson* enjoined a state court prosecution allegedly undertaken in retaliation for or to deter the exercise of constitutionally protected rights, and in doing so, announced a multi-prong test to be applied in similar cases. 593 F.2d at 1377. At its core, the *Wilson* test permits a federal court to enjoin a state criminal proceeding if: (1) the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and that the state's bringing of the criminal prosecution was motivated, at least in part, by a purpose to retaliate for or to deter that conduct; and (2) the state fails to show by a preponderance of the evidence that it would have decided to prosecute even had the impermissible purpose not been considered. *Id.* at 1387. Factors relevant to this determination would include whether the state prosecution was undertaken with no hope of obtaining a valid conviction, and the significance of the alleged criminal activity. *Id.* at 1387 n. 22. However, it is not necessary for the plaintiff to prove that the prosecution could not possibly result in a valid conviction. *Peek*, 636 F.2d at 945.

▪ Although Plaintiff in the instant case has averred few factual allegations to support his claim of bad faith prosecution, the Court finds that these scant allegations are sufficient to pass muster under the *Wilson* inquiry, and therefore withstand, albeit barely, Defendant's Motion to Dismiss. First, there is little question that the conduct allegedly retaliated against or sought to be deterred is constitutionally protected. The Supreme Court has firmly established that access to the courts is protected by the First Amendment right to petition for redress of grievances. *See, e.g., NAACP v. Button*, 371 U.S. 415, 429–30, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1962). In the present case, Jordan claims that criminal charges were brought against him in retaliation for his filing of a Title VII employment discrimination suit against his employer. Plaintiff's effort to vindicate his civil rights in a court of law clearly constitutes a constitutionally protected action. Second, Plaintiff has sufficiently demonstrated that the state's pursuit of the criminal prosecution was motivated, at least in part, by a purpose to retaliate for or to deter Plaintiff's conduct. Only two facts potentially bolster a showing of retaliatory motive: (1) Defendant relied on the testimony of two felony inmates to procure Jordan's indictment; and (2) the attorneys for Matagorda County presented Jordan with a "quid pro quo," offering to dismiss the criminal case against him if Jordan would in turn drop the civil suit against the County and the Sheriff. The first allegation, that the District Attorney garnered the grand jury indictment based on the testimony of felony inmates, contributes minimally to a showing of retaliatory motive. Regardless of the credibility of the witnesses, a grand jury found the requisite probable cause to issue an indictment against Jordan; this fact weighs against a determination that Defendant prosecuted Jordan with no hope of obtaining a valid conviction. However, Plaintiff's second allegation, if proven true, would likely demonstrate that Defendant was motivated, at least in part, by a desire to retaliate against or deter Jordan's exercise of a constitutionally protected right. If Plaintiff can show that attorneys for Matagorda County offered to dismiss Jordan's criminal case in exchange for Jordan's relinquishment of his civil suit, this would lend significant credence to Jordan's allegation that Defendant acted in concert with other Matagorda County officials for the purposes of retaliating against and deterring Jordan from pursu-

ing his employment discrimination claims. Defendant challenges Plaintiff's "quid pro quo" allegation on the basis that civil attorneys lack the authority to effectuate the dismissal of criminal actions. However, Defendant's argument misses the thrust of Plaintiff's allegation. Whether or not a "quid pro quo" offer of the sort alleged is practically viable is irrelevant to the present inquiry because the sheer fact that such an offer was made would tend to indicate a collusive plan among Matagorda County officials to retaliate against Plaintiff. While the Court is keenly aware that Plaintiff has thus far provided *no* evidence to corroborate his claim, the Court is obligated to accept Plaintiff's allegations as true, and to construe all facts in a light most favorable to Plaintiff at *this* stage in the litigation. Having done so, the Court concludes that Plaintiff has pled facts, that if proven true, would satisfy his burden under the *Wilson* test. Because Defendant does not address the *Wilson* inquiry, and therefore does not allege facts showing that he would have prosecuted Plaintiff even absent a retaliatory motive, Defendant has not mitigated this Court's finding of bad faith prosecution. As such, the Court holds that under the Fifth Circuit's interpretation of the bad faith prosecution exception to the *Younger* abstention doctrine, Plaintiff's cause of action has survived Defendant's Motion to Dismiss.[5]

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted is *DENIED.* Although the Court emphatically reminds both parties of its earlier admonishments regarding counsels' briefs, it invites either side to move for further dispositive relief following appropriate discovery revealing such crucial information as the chronology of events to date, motivations of the relevant parties in conducting their actions, and the vitality of the present indictment against Plaintiff, as well as the status of the criminal proceedings against Plaintiff and the results thereof. The Court reserves judgment on the issue of granting injunctive or other equitable relief pending an evidentiary or other appropriate hearing on matters specifically relating to Plaintiff's allegations of bad faith prosecution. The Court further refers all future handling of this suit to United States Magistrate Judge John R. Froeschner up until the time of jury selection and trial. Each party is to bear its own costs in the matter incurred herein to date.

**IT IS SO ORDERED.**

---

**5.** The Court notes in passing that Plaintiff devotes a significant portion of his brief to arguing that he was entitled to an administrative review of his dismissal as a classified civil servant. The Court does not reach the merits of this argument, as it is relevant only to Plaintiff's Title VII suit, but not the instant one.