Curtis W. MORRISON,
Plaintiff–Appellant,

v.

Judge Willie LIPSCOMB and Judge
Harold Ryan, Defendants,

Judge Adam Shakoor and Does I Thru
V, Defendants–Appellees.

No. 87–1616.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 10, 1988.

Decided June 8, 1989.

Curtis W. Morrison, Detroit, Mich., pro se.

Vincent J. Leone, Asst. Atty. Gen., Tort Defense Div., Michael McDaniel (argued), Lansing, Mich., for defendants-appellees.

Before ENGEL, Chief Judge, and WELLFORD and BOGGS, Circuit Judges.

BOGGS, Circuit Judge.

Curtis W. Morrison appeals the district court's dismissal of his action under 42 U.S.C. § 1983. Morrison sued three Michigan state court judges (Judges Lipscomb, Ryan, and Shakoor) and five unknown persons for various alleged deprivations of his constitutional rights. The district court dismissed all of Morrison's claims. Another panel of this court, acting pursuant to Rule 9 of this Court, summarily affirmed the dismissal of the claims against Lipscomb and Ryan because of absolute judicial immunity; it found, however, that the dismissal of the claim against Shakoor could not be summarily affirmed. The case was then referred to this panel for oral argument. We affirm the lower court's dismissal of the claim against Shakoor, but on different grounds than that given by the court below. We also reverse the district court's denial of Morrison's motion to amend his complaint and that court's grant of attorney's fees and costs to the defendants.

I

This case concerns various attempts of Morrison, a landlord, to retrieve some of his rental properties from allegedly delinquent tenants. In 1986, Morrison sued in state court to recover from a tenant certain real property he owned. In October 1986, the case was tried in front of Judge Lips-comb. The court held against Morrison, and the case was dismissed.

Morrison then initiated another action in state court to recover real property. On November 24, 1986, Judge Ryan held a hearing on the matter and gave judgment to the plaintiff, holding that he had a right to possession of the property. After Morrison refused the judge's suggestion that he voluntarily give the tenants two weeks to move out rather than the minimum ten days required by law, Judge Ryan ordered that Morrison not be given a writ of restitution for fourteen days.[1]

In the meantime, on November 7, 1986, Judge Adam Shakoor, purportedly acting in his capacity as Chief Judge of the 36th District Court, declared a moratorium on the issuance of writs of restitution. Though the record does not contain a copy of the order, the parties agree that this moratorium was to be in effect from December 15, 1986 through January 2, 1987, in observance of the holiday season. This moratorium was apparently a traditional practice.

Morrison alleges that he filed a petition for the writ of restitution on December 9, 1986, after the fourteen-day stay ordered by Judge Ryan expired. However, he alleges that the office of the clerk of the court, citing the moratorium ordered by the court, refused to process the petition, although the moratorium was not scheduled to commence until December 15. Morrison then filed this suit, alleging that Lipscomb and Ryan had deprived him of his property without due process and that the Shakoor moratorium violated "the separation of church and state." Morrison later sought to amend his complaint to add the clerk of the court, John Paul, as a defendant. (The clerk was identified in the original complaint as Doe I.) Morrison alleges that the clerk, by not processing his writ, violated his rights to equal protection and due process under the fourteenth amendment of the Constitution.

The district court held, and this court has affirmed, that Judges Lipscomb and Ryan

---

1. Mich. Comp. Laws § 600.5744(4) states that "the writ of restitution shall not be issued until the expiration of 10 days after the entry of the judgment."

are immune to suit because they were acting in a judicial capacity. The court also dismissed the suit against Shakoor. The court stated:

> [The moratorium] probably cannot be seen as a judicial act. However, even though it is not such an act, the complaint will be dismissed with respect to this defendant. The complaint does not state a claim of constitutional dimension. There is a state process for the relief the plaintiff seeks here, and federal courts cannot provide a forum for this complaint against the state district court's activities.

The court also denied Morrison's motion to amend in order to add the clerk of the court because the clerk was only following Shakoor's order. Lastly, the court awarded the defendants fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure because Morrison filed his suit without making a "reasonable inquiry" as to the law. Morrison then appealed.

## II

■ The threshold question in this action is whether Shakoor is entitled to judicial immunity. Morrison contends, and the district judge appeared to agree, that Shakoor was acting in an administrative, not a judicial, capacity when he issued the moratorium. The Supreme Court recently dealt with the subject of judicial immunity in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

The Court in *Forrester*, which involved a state judge who allegedly demoted and discharged one of his employees on account of her sex, limited absolute judicial immunity to those acts which are truly judicial acts and are not simply administrative acts. *Id.*, 108 S.Ct. at 544 (The cases "suggest an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."). This limitation is imposed even if the administrative function is essential to the le-

gal system. For example, in *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731, 100 S.Ct.1967, 1974, 64 L.Ed.2d 641 (1980), the Court held that the Supreme Court of Virginia was acting in a legislative, not a judicial, capacity when it issued a Bar Code governing the actions of attorneys. The Court concluded: "Although it is clear that under Virginia law the issuance of the Bar Code was a proper function of the Virginia Court, propounding the Code was not an act of adjudication but one of rulemaking." *Ibid.*[2]

The Court has thus attempted to give a flexible definition of what constitutes a judicial act. Clearly, the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court. *Forrester*, 108 S.Ct. at 544. After this easy case, though, the lines are not always clear. The Court has relied on a functional analysis to determine which acts are protected, meaning that one must determine whether the actions are truly judicial acts or "acts that simply happen to have been done by judges." *Ibid.* In the words of the Court, "immunity is justified and defined by the *functions* it protects and serves, not by the persons to whom it attaches." *Ibid.* (emphasis supplied). Thus, the reason for the decision in *Forrester* is clear. A judge is not taking a judicial act when he fires his personnel. He is acting as an employer who is also a judge.

This case presents a more difficult problem. Mich. Comp. Laws § 600.8212 provides for the election, by the judges of the court, of a presiding judge of a judicial district. The statute also states that the presiding judge, in this case, Shakoor, "shall have full authority and control, subject to supervision of the supreme court, over all matters of administration." This authority is provided for in Mich. Comp. Laws § 600.219 which gives the supreme court (and, through § 600.8212, the presiding judge of the district court, as super-

---

**2.** However, a decision to expel an attorney as a sanction for contempt of court is a judicial act.

*Forrester*, 108 S.Ct. at 544.

vised by the supreme court) "the authority to issue any writs, directives, and mandates that it judges necessary and expedient to effectuate its determinations, and to take any action it deems proper to facilitate the proper administration of justice." [3]

Assuming that Shakoor issued his moratorium under his authority to facilitate the proper administration of justice, the question becomes whether that was a judicial act. The defendants contend that the moratorium, while not an act of strict adjudication between parties, nevertheless is a judicial act in that no one but a judge could issue such an order. In other words, they argue that the order may not be an adjudication, but it governs how the adjudications will be pursued. The legislature, the defendants contend, does not issue specific technical rules on how to process requests for certain writs; it is the role of a court, and only a court, to fulfill this role. The nature of this act, the defendants conclude, unlike that of the firing of the employee in *Forrester*, is judicial, not simply administrative. *See Sparks v. Character & Fitness Committee*, 859 F.2d 428, 434 (6th Cir.1988) (Court upheld immunity for decisions concerning the admission of an applicant to the bar, stating: "Some functions performed by courts are so inherently related to the essential functioning of the courts as to be traditionally regarded as judicial acts.")

However, simply because rule making and administrative authority has been delegated to the judiciary does not mean that acts pursuant to that authority are judicial. This proposition is equally true if the authority has been traditionally given to the courts. Prescribing a code of civil procedure (or, in *Supreme Court of Virginia*, a bar code) may be done by the courts, but it could, without doubt, be done by the legislature. The legislature could also pass a statute prohibiting the issuance of writs of possession during the holiday season, just as they passed the statute governing the minimum number of days one must wait

before issuing such a writ. Thus, under this analysis, while Shakoor may have had the authority to do what he did, that authority was not judicial authority. Rather, it was delegated administrative authority.

We hold that judicial immunity does not apply. Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one. Shakoor's moratorium was a general order, not connected to any particular litigation. The order did not alter the rights and liabilities of any parties but, rather, instructed court personnel on how to process the petitions made to the court. This case differs from an adjudication in that a litigant offended by a judicial act can, in the vast majority of cases, appeal the court's decision to a higher court; here, no direct appeal is available, making the absence of judicial liability far less reasonable. This case also differs from that of the decision to admit someone to the bar, for it is solely the role of the court to determine who shall practice before it. One could, on the other hand, imagine a court administrator ordering that the processing of these petitions be delayed because other court business was of a higher priority. We hold, then, that the Shakoor order was an administrative, not judicial, act and that absolute immunity does not apply.

█ It is clear, however, that Shakoor is entitled to qualified immunity from a suit for damages. A government official performing a discretionary function is entitled to qualified immunity from a suit for damages if the official has not violated "clearly established constitutional rights of which a reasonable official would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *See also Anderson v. Creighton*, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (clarifying qualified immunity analysis by holding that the right in question must be particularized). Shakoor acted within his discretionary au-

---

**3.** The defendants contend that Judge Shakoor had the power to issue the moratorium under Mich. Comp. Laws § 600.223, which empowers the Michigan Supreme Court to issue rules gov-

erning practice and procedure in the Michigan courts. It is our view, however, that § 600.219 is stronger authority for the issuance of the order in question.

thority as chief judge in declaring the moratorium, and while, as we discuss below, Morrison's suit does raise serious constitutional questions, it is clear that the moratorium did not violate any clearly established rights of which any reasonable official would be aware. Indeed, the outcome of this suit on remand may determine, as a matter of first impression, whether any constitutional rights are violated by this kind of moratorium. We note, however, that had Morrison requested injunctive or declaratory relief, instead of monetary damages, Shakoor would not be protected by any immunity, and the serious issues involved in this action could have been resolved.

### III

While we hold that Shakoor is not liable for damages, we disagree with the district court's conclusion that Morrison has not stated a claim of "constitutional dimension." Morrison contends, in his claim against Shakoor, that the lengthy holiday moratorium violated the "separation of church and state," presumably meaning that the moratorium is an establishment of religion in violation of the first amendment to the Constitution. Morrison also contends that the clerk of the court, by not processing his petition for a writ of restitution, violated his fourteenth amendment rights to equal protection and due process. The defendants argue in response to Morrison that this moratorium is simply a harmless, traditional recognition of the holiday season and is not a major burden on Morrison's rights. The defendants argue in their brief that the plaintiff was "aware that the moratorium has been imposed by the Court over the span of several years" and thus the moratorium did not "violate Plaintiff's rights or shock the conscience of the Court."

We believe that the defendants, as well as the district court, misunderstood both the nature of Morrison's right to judicial process for the recovery of his property and the potential seriousness of the burden the moratorium places on that right. The defendants seem to interpret the provision of a judicial process for the recovery of property a favor that the government grants its citizens, rather than a right to which they are entitled. In other words, the state has free rein to decide if and when it will allow citizens to obtain judicial orders to recover their property.

This view is contrary to both the avowed principles and the spirit of the American polity. It is a prime tenet of our American political philosophy that government has a responsibility to protect the lives, liberties, and property of its citizens, and part of that responsibility includes the provision of courts where individual citizens can seek the vindication of their rights.[4] Morrison has the right to go to court to recover his property; it is not a privilege that can be granted or denied him at the government's whim. It is this right to vindicate one's rights in court that is the heart of the constitutional right to due process of law.[5] This principle is expressed in one of the

---

**4.** "The legislative or supreme authority cannot assume to itself a power to rule by extemporary, arbitrary decrees, but is bound to dispense justice and to decide the rights of the subject by promulgated, standing laws, and known authorized judges." J. Locke, *The Second Treatise of Civil Government*, Chap. X, § 136 (T. Cook ed. 1947) (6th ed. 1764). This principle was expressed in our Declaration of Independence, which states that, in order to secure the unalienable rights of all citizens, among which are life, liberty, and the pursuit of happiness, "Governments are instituted among Men" and "whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or abolish it ..." The necessity of judicial process for the establishment of just government is demonstrated by the inclusion among the "long train of abuses" compelling the separation of the American Colonies from Great Britain of the contention that the King of Great Britain "obstructed the Administration of Justice, by refusing his Assent to Laws for establishing Judiciary Powers."

**5.** The proposition that the states have the responsibility to provide their citizens some kind of judicial process is strongly supported by Art. IV, § 4 of the Constitution, which states: "The United States shall guarantee to every State in this Union a Republican Form of Government ..." It is settled, however, that Congress, not the courts, has the responsibility for enforcing this provision. *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

original sources of the theory of constitutionalism, the Magna Carta. Section 40 of that document states that among the duties government owes to its subjects is that "To no one will we sell, to no one will we refuse or delay, right or justice."[6] This principle is also expressed in the Supreme Court's holding that the due process clause of the fourteenth amendment prevents states from "denying potential litigants use of established adjudicatory procedures, when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed right[s].'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429–30, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265 (1982), *quoting Boddie v. Connecticut*, 401 U.S. 371, 380, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971).

Thus, any state attempt to limit the right of individuals to go to court to have their rights vindicated is a matter of serious import. While no doubt a state can reasonably regulate the operation of the courts by, for example, limiting the hours in which a judge is available or even by closing the courts for a regular holiday or an extemporaneous one, such as the assassination of a President, it is doubtful that it could simply choose to close down its courts for a lengthy period of time, forestalling all attempts by citizens to enforce their legal rights. There is a plausible argument that this moratorium is not a reasonable regulation of the judicial system but is rather a deprivation of the putative litigant's right to due process. This argument applies with particular force to this case because the clerk of the court allegedly refused to process Morrison's request for judicial ac-

tion as early as December 9, six days before the moratorium was to take effect, making the alleged deprivation of due process even more inexcusable.[7]

We are also concerned by the fact that this moratorium, unlike a general closing of courts for the legislated holiday of Christmas, excluded only a particular class of cases from the courts, a class brought by an unpopular group in our society, landlords. If Morrison, who is a Black landlord, had been excluded from the courts because he is Black, there would be no doubt that his rights to equal protection and due process under the fourteenth amendment were violated. These rights are not relinquished because he is a landlord.

Because of our concern that Morrison's rights may very well have been violated, we reverse the decision of the district court denying Morrison's motion to amend his complaint by naming the clerk of the court as a defendant. Since the clerk acted in a ministerial, not a discretionary, capacity in implementing the order issued by Shakoor, the defense of qualified immunity is not available to the clerk. *Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir.1987). We hold, then, that Morrison should be allowed to add the clerk as a defendant and that the district court should consider his claim in accordance with the concerns we have expressed in this opinion.[8]

### IV

■ The court below assessed fees and costs against Morrison, finding that his suit was pursued without "reasonable inquiry" as to the law. A trial court's decision to

6. The original Latin text reads: "Nulli vendemus, nulli negabimus, aut differemus, rectum aut justiciam."

7. Morrison's contention that the moratorium is an establishment of religion in violation of the first amendment to the Constitution also raises a serious question. Under the Supreme Court's framework for the analysis of establishment claims, a state action, to be held constitutional, must: (1) have a secular purpose; (2) not have the primary effect of advancing or inhibiting religion; and (3) not foster an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d

745 (1971). The constitutionality of the moratorium under this test, particularly whether the moratorium has a sufficiently secular purpose or advances a particular religion, is a question which deserves serious consideration on remand.

8. We note that should Morrison press on with his claim that he was deprived of a right to property without due process of law, he must plead and prove that there does not exist any adequate state remedy for the deprivation. *Ramsey v. Board of Education of Whitley County*, 844 F.2d 1268, 1272 (6th Cir.1988).

award fees should be reversed only if there was an abuse of discretion. *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir.1986). However, this court has also held that "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Id.* at 1232. In order to be guilty of this kind of misconduct, a plaintiff's claim must be found to have been frivolous, unreasonable, or groundless. *Ibid.*

In light of the foregoing discussion of the serious questions raised by Morrison's allegations, we can not reasonably hold that the plaintiff's claims were frivolous, unreasonable, or groundless. We therefore REVERSE both the award of fees and costs to the defendants and the denial of the plaintiff's motion to amend in order to add the clerk of the state court as a defendant and REMAND for further proceedings in accordance with this opinion. We AFFIRM, on the basis of qualified immunity, the dismissal of defendant Shakoor.

WELLFORD, Circuit Judge, concurring:

I concur with Judge Boggs' reasoning and the result reached in this case. I write separately to emphasize that the "moratorium" involved in this case has clear establishment of religion implications because of the significant length of the period involved in which Morrison, and others similarly situated, were barred by Judge Shakoor administratively and effectively from access to the courts and from a remedy clearly granted by the law. The period involved constituted approximately eighteen days, nearly five percent of the year. It not only had establishment of religion implications, it involved significant deprivation of court process, but it also may have constituted a taking, without process, of Morrison's property or property interests.

Declaring a court holiday, even for a period of a few days, I believe, has little real or practical significance that would be of any constitutional concern. That is not

our case, and I therefore join the opinion of Judge Boggs.