**Sanford J. BERGER; Robert M. Fertel, Plaintiffs–Appellants,**

v.

**CUYAHOGA COUNTY BAR ASSOCIATION, et al., Defendants–Appellees.**

**No. 91–4178.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1992.

Decided Jan. 11, 1993.

Rehearing and Rehearing En Banc Denied March 12, 1993.

Sanford J. Berger (argued and briefed), Robert M. Fertel, (argued) Berger & Fertel, Cleveland, OH, for plaintiffs-appellants.

David W. Mellott (briefed), Mark A. Phillips (argued), Kenneth A. Bravo, Benesch, Friedlander, Coplan & Aronoff, Ellen S.

Mandell, Turbow, Monastra & Mandell, Cleveland, OH, for defendants-appellees Cuyahoga County Bar Ass'n, Robert J. Fay, Grievance Committee of Cuyahoga County Bar Ass'n, Richard Koblentz and Lawrence Turbow.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Plaintiffs Sanford J. Berger and Robert M. Fertel appeal the dismissal of their complaint seeking injunctive, declaratory, and monetary relief for claims arising out of state bar disciplinary proceedings brought against them. The district court dismissed the complaint on the basis of *Younger* abstention and the state action immunity. 775 F.Supp. 1096 (N.D.Ohio 1991). We hold that plaintiffs' claims are barred by judicial immunity, state action immunity, *Younger* abstention, and mootness. We AFFIRM.

## I. FACTS

Plaintiffs are attorneys licensed to practice law in Ohio. They represented Daniel Gurish in a federal civil rights action in which the jury awarded Gurish $100,000 in damages. Plaintiffs filed a motion to recover their fees under 42 U.S.C. § 1988.[1] This prompted a settlement offer of $130,-000, inclusive of attorney fees. Against plaintiffs' advice, Gurish accepted the settlement offer.

Plaintiffs and Gurish disagreed as to the proper division of the settlement amount. Plaintiffs maintained that they were entitled to 50% of the original jury award of $100,000 *plus* the additional $30,000 award in the settlement, for a total of $80,000. Gurish contended that he was to receive $100,000, the full amount of his jury award. As a result of the dispute, Gurish obtained new counsel and brought suit against plaintiffs. Gurish ultimately settled with plaintiffs for $65,000, half of the settlement amount.

Although the matter was resolved, Gurish filed a complaint with the Cuyahoga County Bar Association regarding plaintiffs' conduct. An investigation by the Certified Grievance Committee of the Ohio Bar Association followed.[2] The Grievance Committee scheduled an Investigative Hearing for November 20, 1989. At the hearing, the Grievance Committee found probable cause to file a formal complaint against plaintiff Berger. The matter was referred to a probable cause panel.[3]

The Grievance Committee also filed an initial complaint against plaintiff Fertel based on testimony presented at the hearing. Another Investigatory Hearing was held on February 8, 1990, at which probable cause was found to support a formal complaint against plaintiff Fertel. This matter was also referred to a probable cause panel. Both complaints against plaintiffs were certified on October 18,

---

1. Section 1988(b) provides, in pertinent part:

   In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. This committee is certified by the Board of Commissioners on Grievances and Discipline of the Supreme Court (Board of Commissioners) and is authorized to investigate complaints alleging attorney or judicial misconduct. *See* Supreme Court Rule for the Government of the Bar V, § 6(c) [hereinafter Supreme Court Rule].

3. The Grievance Committee's finding of probable cause is preliminary. The matter must be reviewed by a probable cause panel composed

of three members of the Board of Commissioners. The panel reviews the matter to decide whether probable cause exists to charge an attorney with misconduct. If so, the formal complaint and a summary of the Grievance Committee's findings are sent to the Secretary of the Board of Commissioners who may certify the formal complaint and forward it to the Board of Commissioners if the Secretary finds that probable cause exists. Supreme Court Rule V, §§ 10–11. Once certified, the respondent must file an answer to the complaint. Supreme Court Rule V, § 12(a). Once the answer is received, a hearing panel of three commissioners is appointed and a formal adjudicatory hearing is held. Supreme Court Rule V, § 13. If disciplinary action is recommended by the panel, the matter is referred to the Supreme Court of Ohio for final decision. Supreme Court Rule V, § 18.

1990, and a formal hearing was held on April 19, 1991.

On January 23, 1990, in the midst of the investigation, plaintiff Berger filed a complaint in federal district court seeking a declaratory judgment, injunctive relief, money damages, and costs. On February 28, 1990, plaintiff Berger amended the complaint to add Fertel as a plaintiff. Plaintiffs alleged various constitutional and antitrust violations on the part of the Ohio Supreme Court, the Cuyahoga County Bar Association, its committees, and its members.

On September 19, 1991, the district court dismissed the complaint based on *Younger* abstention and state action immunity from the antitrust claims. Plaintiffs filed a motion to alter or amend judgment which the district court denied. This timely appeal followed.

On September 2, 1992, during the pendency of this appeal, the Supreme Court of Ohio issued a decision finding that plaintiffs had charged an excessive fee, had withheld settlement proceeds from their client, and had interfered with the bar association investigation. Because of these infractions, the court suspended plaintiffs from the practice of law for one year. *Cuyahoga County Bar Ass'n v. Berger*, 64 Ohio St.3d 454, 597 N.E.2d 81 (1992) (per curiam).

## II. STANDARDS OF REVIEW

We review decisions to abstain de novo. *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, 967 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991); *Litteral v. Bach*, 869 F.2d 297, 298 (6th Cir.1989); *Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir.1985). Further, the application of judicial immunity and state action immunity are questions of law which we also review de novo. *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir.1990) (judicial immunity); *Grason Elec. Co. v. Sacramento Mun. Util. Dist.*, 770 F.2d 833, 835 (9th Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 886, 88 L.Ed.2d 921 (1986) (state action immunity).

Questions of jurisdiction are fundamental matters which we may review sua sponte. *Carras v. Williams*, 807 F.2d 1286, 1289 n. 5 (6th Cir.1986). Thus, we address the problem of mootness on our own motion.

## III. ANALYSIS

On appeal, plaintiffs contend that the Ohio disciplinary action is an improper exercise of state jurisdiction, which is by federal law preempted as well as being unconstitutional. Plaintiffs also raise antitrust claims. Plaintiffs seek money damages for the alleged constitutional and antitrust violations, an injunction against the state proceedings, and a declaratory judgment that the proceedings are unconstitutional. Defendants counter that these claims are not properly before this court because of immunity and *Younger* abstention. We address plaintiffs' claims seeking money damages first.

### A. MONEY DAMAGES

#### 1. Judicial Immunity

Plaintiffs seek money damages for constitutional and antitrust violations. Defendants maintain that, under doctrines of immunity, these claims are barred.

Traditionally, judges have enjoyed broad immunity from suit for judicial acts. *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988). Judicial immunity, however, does not preclude suit for prospective relief such as an injunction. *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984). Further, the existence of judicial immunity depends on whether the offending actions were taken to carry out a judicial function. *Forrester*, 484 U.S. at 227, 108 S.Ct. at 544. *See Sparks v. Character and Fitness Comm.*, 859 F.2d 428, 432–34 (6th Cir.1988), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989).

However, judges may be entitled to different types of immunity if non-judicial functions are involved. For example, the Supreme Court has held that judges

who promulgate a code of conduct for attorneys act in a legislative capacity and are entitled to legislative immunity from suits based on such actions, rather than judicial immunity. *Forrester*, 484 U.S. at 228, 108 S.Ct. at 544. On the other hand, a judge who enforces a code of conduct is entitled to prosecutorial immunity. *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 736–37, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980). *See Forrester*, 484 U.S. at 228–29, 108 S.Ct. at 544–45. Because prosecutors are absolutely immune from suit for money damages, judges acting as enforcers are also absolutely immune from suit for money damages. *Consumers Union*, 446 U.S. at 736, 100 S.Ct. at 1977; *Imbler v. Pachtman*, 424 U.S. 409, 421–29, 96 S.Ct. 984, 990–94, 47 L.Ed.2d 128 (1976).

■ In the present appeal, defendants' role was that of an enforcer. Thus, under *Forrester* and *Consumers Union*, the Supreme Court of Ohio and its justices are immune from suit for money damages. The Cuyahoga County Bar Association, its committees and members are likewise immune from suit because they acted as arms of the Supreme Court of Ohio in performing a function for which the court and its justices are immune. *Sparks*, 859 F.2d at 433 ("[I]t is of no moment that the actor is a designee of the justices of [the Supreme Court of Ohio] rather than the justices themselves."). *See also Watts v. Burkhart*, 978 F.2d 269 (6th Cir.1992) (en banc) (discussing prosecutorial and judicial immunity).

### 2. State Action Immunity

■ Plaintiffs also allege that the disciplinary rules and proceedings are unreasonable restraints on trade which violate the Sherman Act, 15 U.S.C. §§ 1 through 7. Defendants raise state action immunity in defense to this claim.

The Supreme Court has stated that state action immunity precludes application of the Sherman Act to state programs. *Parker v. Brown*, 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943). This is because the Sherman Act was not intended to

limit state programs which "derive [their] authority and ... efficacy from the legislative command of [a sovereign] state." *Id.* at 350, 63 S.Ct. at 313.

The Court has applied this doctrine to the promulgation and enforcement of codes of ethical conduct for attorneys. In *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court held that disciplinary rules promulgated by a state supreme court pursuant to a constitutional grant of authority over the practice of law are directives of the sovereign which qualify for state action immunity. *Id.* at 359–63, 97 S.Ct. at 2696–99.

In the present case, plaintiffs violated Ohio disciplinary rules regarding fees, settlement proceeds, and disciplinary investigations. These rules were promulgated by the Supreme Court of Ohio pursuant to its constitutional grant of power to regulate the practice of law. *See* Ohio Const. art. IV, § 2(B)(1)(g). Promulgation and enforcement of the rules are plainly exercises of Ohio's sovereign power. Under *Bates*, state action immunity exists and plaintiffs' antitrust claims are barred.

### B. INJUNCTIVE AND DECLARATORY RELIEF

#### 1. *Younger* Abstention

■ Plaintiffs sought to enjoin the state disciplinary proceedings and to have the proceedings declared unconstitutional. Defendants respond that the district court properly abstained under *Younger*.

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless "the danger of irreparable loss is both great and immediate." *Id.* at 45, 91 S.Ct. at 751 (quoting *Fenner v. Boykin*, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). The Supreme Court extended *Younger* "to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). *See Moore v. Sims*,

442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604–05, 95 S.Ct. 1200, 1208–09, 43 L.Ed.2d 482 (1975).

In *Middlesex*, a case similar to the present appeal, a lawyer challenged disciplinary proceedings of the New Jersey Bar Association by filing suit in federal court. He contended that the proceedings violated his First Amendment rights. *Middlesex*, 457 U.S. at 427–29, 102 S.Ct. at 2518–20. The Court held that the federal district court correctly dismissed the case based on *Younger*. As part of its analysis, the Court enunciated a three-part inquiry for the application of *Younger* abstention to state bar disciplinary hearings:

> [F]irst, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.* at 432, 102 S.Ct. at 2521 (emphasis omitted). The similarities between the present appeal and *Middlesex* demand that we likewise abstain in this case.

As to the first question, the *Middlesex* Court found that the New Jersey State Constitution vested the power to govern and discipline the bar in the New Jersey Supreme Court and that the New Jersey proceedings were judicial in nature and the first prong of *Middlesex* was satisfied. *Id.* at 433–34, 102 S.Ct. at 2522. Similarly, Ohio's constitution vests original jurisdiction in its supreme court over "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Ohio Const. art. IV, § 2(B)(1)(g). Thus, the proceedings are within the "constitutionally-prescribed jurisdiction" of the Supreme Court of Ohio.

Further, like the New Jersey proceedings, the Ohio disciplinary proceedings are carried out by committees which are arms of the Ohio Supreme Court. A Grievance Committee reviews an initial complaint and investigates to decide if a prima facie case of improper conduct exists; if so, a formal hearing is held. The supreme court ultimately decides what discipline should be given. *Cf. id.* at 425–27, 102 S.Ct. at 2518–19. Thus, the Ohio procedures are judicial in nature and the first prong of *Middlesex* is satisfied.

Regarding the second prong of the *Middlesex* test, the Court found "an extremely important [state] interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Id.* at 434, 102 S.Ct. at 2522. Indicative of that interest was the very fact that the New Jersey Bar Association, an agency of the state, was involved as a defendant in federal court and the initiator of state proceedings. *Id.* at 434–35, 102 S.Ct. at 2522–23. Here, the Ohio defendants were also involved in federal litigation to protect Ohio's role in maintaining the integrity of its legal profession. As in New Jersey, regulation of the legal profession is of great importance to Ohio and the second prong is satisfied.

In evaluating the third prong of its analysis, the Court stated that "[s]o long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Id.* at 435, 102 S.Ct. at 2523. The Court found that the New Jersey proceedings provided the respondent with the opportunity to present his constitutional claims by answering the complaint against him and raising the issues to the committees and the Supreme Court of New Jersey. *Id.* at 435–36, 102 S.Ct. at 2522–24. Like the respondent in *Middlesex*, plaintiffs had the opportunity to present their constitutional claims in their answer to the complaint against them.[4]

---

4. The Court also found that respondent had an adequate opportunity to present his arguments because the New Jersey Supreme Court had reviewed the constitutional issues sua sponte.

The Supreme Court of Ohio did not engage in such a review, but that is not dispositive. Prior to considering New Jersey's sua sponte review, the Court stated that the proceedings themselves

Plaintiffs allege bad faith and harassment on the part of the Grievance Committee. First, they argue the proceedings harass civil rights attorneys, thereby impairing federal rights under 42 U.S.C. § 1983. However, plaintiffs have not alleged specific facts showing a concerted effort to discipline only civil rights attorneys. Second, they argue the proceedings were brought in bad faith because of past conflicts in litigation with members of the Grievance Committee. This argument is without merit. The very nature of our adversarial legal system requires attorneys to oppose each other during litigation in order to represent zealously the interests of the client. Since the bar association is a self-governing body, it is inevitable that attorneys who have disagreed in prior matters will eventually be called on to discipline each other. Absent specific facts demonstrating bad faith by the Committee, we find that the third *Middlesex* factor requires abstention.[5]

■■■■ Finally, plaintiffs argue that *Middlesex* is inapplicable because the conduct which violated the state disciplinary rule in *Middlesex* arose in a state court case based on state law whereas the present conduct arose in a federal court case based on federal law. This argument is also without merit. Federal courts have the inherent authority to discipline attorneys practicing before them and to set standards for their conduct. *See Stone v.*

*Philadelphia and AFSCME Dist. Council 33, Local 159,* No. 86–1877, 1986 WL 13483, at *4 (D.Pa. Nov. 25, 1986); *International Business Machs. Corp. v. Levin,* 579 F.2d 271, 279 n. 2 (3d Cir.1978). Nevertheless, we know of no authority, and plaintiffs have cited none, stating that federal disciplinary standards preempt states from disciplining attorneys for improper acts performed in federal courts.[6] *Younger* abstention is appropriate in this instance.

### 2. Mootness

■■■■ Although not raised by the parties, we also find that issuance of the decision by the Ohio Supreme Court moots plaintiffs' claims for injunctive and declaratory relief against defendants. We are therefore without power to hear these claims. U.S. Const. art. III, § 2; *Carras v. Williams,* 807 F.2d 1286, 1289 (6th Cir. 1986). "Mootness results when events occur during the pendency of the litigation which render the court unable to grant the requested relief." *Carras,* 807 F.2d at 1289.[7] Nothing remains to be enjoined or declared improper.

For all the foregoing reasons, we AF-FIRM.

made "it ... difficult to conclude that there was no 'adequate opportunity' for respondent ... to raise his constitutional claims." *Id.* at 435–36, 102 S.Ct. at 2522–24. Thus, the New Jersey Supreme Court's review was merely an additional fact, not the linchpin of the decision. The Ohio proceedings allowed plaintiffs the same opportunity to present constitutional arguments as the respondent in *Middlesex* had.

5. Our decision is consistent with the findings of other courts which have refused to interfere with state bar proceedings. *See Hefner v. Alexander,* 779 F.2d 277, 279–80 (5th Cir.1985); *Mason v. Departmental Disciplinary Comm.,* 894 F.2d 512, 514–16 (2d Cir.), *cert. denied,* 497 U.S. 1025, 110 S.Ct. 3274, 111 L.Ed.2d 784 (1990); *Richardson v. The Florida Bar,* No. 90–0984, 1990 WL 116727, at *2, 1990 U.S. Dist. LEXIS 5864, at *10–11 (D.D.C. May 15, 1990); *Gipson v. New Jersey, Supreme Court,* 558 F.2d 701, 703–04 (3d Cir.1977) (pre-*Middlesex* case).

6. Even if preemption applies, it does not preclude abstention unless the state court is actually denied jurisdiction by federal statute. The reason is straightforward: state courts are as capable of adjudicating preemption claims as federal courts. *Federal Express Corp. v. Tennessee Public Serv. Comm'n,* 925 F.2d 962, 968 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991); *CSXT, Inc. v. Pitz,* 883 F.2d 468, 471–74 (6th Cir.1989), *cert. denied,* 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 616 (1990).

7. In *Carras,* the Supreme Court had denied a writ of certiorari to appeal a state supreme court decision. *Carras,* 807 F.2d at 1288. Although the *Carras* court emphasized the denial of certiorari as mooting the corresponding federal suit seeking to enjoin the state court proceedings, we nevertheless find that the claims for injunctive and declaratory relief are also moot.