**Shelly L. MANN; Robert W. Thorson, Plaintiffs–Appellants,**

**Beverly Kish, Proposed Intervenor– Appellant,**

v.

**Patrick J. CONLIN, Defendant–Appellee.**

**No. 93–1395.**

United States Court of Appeals, Sixth Circuit.

Argued March 14, 1994.

Decided April 15, 1994.

Shirley J. Burgoyne (argued and briefed), Ann Arbor, MI, for Shelly L. Mann, Robert W. Thorson and Beverly Kish.

Earl R. Jacobs, Jacobs & Miller, Southfield, MI, Amy E. Anderson (argued), Barry H. Somlyo (briefed), Jacobs & Miller, Southfield, MI, for defendant-appellee.

Before: JONES, BOGGS, and DAUGHTREY, Circuit Judges.

BOGGS, Circuit Judge.

The plaintiffs, Robert Thorson, Shelly Mann, and Beverly Kish, are litigants who have appeared before the defendant, Michigan Circuit Judge Conlin, in a variety of domestic relations cases. The plaintiffs filed this 42 U.S.C. § 1983 action in federal district court, alleging that Judge Conlin's manner of conducting cases violates their due process and equal protection rights. The district court dismissed their complaint on the grounds that Judge Conlin was entitled to judicial immunity on the plaintiffs' claim for money damages and that the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) required the federal court to abstain from granting equitable relief. Because we find that the district court's conclusions of law are correct, we affirm.

I

The gravamen of the plaintiffs' complaint is the manner in which Judge Conlin conducts divorce, custody, and support hearings in his courtroom. Each plaintiff has a long list of complaints about Judge Conlin's conduct in his or her case. While an exhaustive litany of the plaintiffs' individual complaints is not necessary, we include a brief description to indicate the flavor of this case.

*Plaintiff Thorson*

Robert Thorson alleges that Judge Conlin required Thorson to pay $500 to his wife's

attorney before Thorson could get a hearing on whether or not a proposed judgment of divorce conformed to the record made at the hearing. Since Thorson did not have $500 in his pocket, Judge Conlin entered the original judgment over Thorson's objections. Thorson did not appeal this order.

Several months later, Thorson appeared before Judge Conlin in a dispute regarding visitation rights. Judge Conlin allegedly told Thorson that a hearing on this issue would be scheduled only if Thorson paid the retainer for his wife's attorney, paid her attorney's fees, and agreed to be bound by the referee's findings. Thorson did not appeal this order, either.

Thorson also alleges that at a later date he asked Judge Conlin to grant an adjournment because he was ill. Judge Conlin allegedly made the grant of adjournment contingent on Thorson paying his ex-wife $135, the amount that she claimed she was losing in wages for the day. Because he did not have the $135, Thorson alleges he was forced to proceed while ill. Judge Conlin's order was later affirmed by the Michigan Court of Appeals.

Finally, Thorson alleges that Judge Conlin forced Thorson to pay $1,535 to his ex-wife's attorney before he would set a hearing date on Thorson's motion for change of custody. Judge Conlin also allegedly refused to set the hearing until Thorson's appeal on the custody issue was resolved.

### Plaintiff Mann

Shelly Mann's complaint against Judge Conlin is the result of a custody battle. Judge Conlin originally awarded custody to Mann, but her ex-husband filed a motion to change the order. A referee held a hearing and recommended that Mann's ex-husband have custody. Mann objected and requested a *de novo* hearing on the issue, to which she was apparently entitled under Mich.Comp. Law § 552.507. Judge Conlin, however, gave custody to Mann's ex-husband without granting Mann a hearing. Mann appealed this ruling and refused to turn over her children to her ex-husband. She relented after she spent 10 days in jail. The Michigan Court of Appeals held that Judge Conlin

acted correctly in jailing Mann for refusing to turn over her children.

Mann's *de novo* hearing was held six months after Mann requested it, even though a court rule required Judge Conlin to hold the hearing within 56 days. He awarded custody to Mann's ex-husband, ordered supervised visitation, and set child support payments. According to Mann's complaint, this order was overturned on appeal. On remand, Judge Conlin made other arrangements that Mann found unsatisfactory.

Finally, Mann's ex-husband requested permission to move out of state with their minor children. Judge Conlin ordered a hearing to be held within one week. During this hearing, Mann objected on the grounds of jurisdiction, claiming that the pending appeal of the earlier custody decision divested the court of jurisdiction. Mann alleges that Judge Conlin stopped the hearing, telephoned the court of appeals, and then advised Mann's ex-husband to move for a remand. Mann's ex-husband followed the judge's advice and made a motion in the court of appeals for a remand, which was granted. After remand, Judge Conlin granted Mann's ex-husband permission to move out of state with the children.

### Proposed–Intervenor Kish

Beverly Kish's story is similar to Mann's. Kish was a defendant in a divorce action in which Judge Conlin granted Kish's husband a divorce. She appealed the judgment. Kish alleges that Judge Conlin continued to enter orders in her case despite a lack of jurisdiction. Most notably, Judge Conlin suspended Kish's visitation rights until she underwent a psychological evaluation. Kish did not submit to an evaluation and she apparently still does not have visitation rights.

Kish also objects to Judge Conlin ordering her to pay the total cost of securing expert testimony about her children's mental well-being. Kish maintains that Judge Conlin had previously ordered Kish and her ex-husband to share the costs. Kish, however, did not appeal this ruling. Finally, Kish claims that he was openly biased against her and showed favoritism to her ex-husband.

She alleges that even when Judge Conlin granted a *de novo* hearing on the issue of custody, he made it clear from the start that he would still grant custody of the children to her husband.

### Proceedings

Thorson and Mann sued Judge Conlin under 42 U.S.C. § 1983, claiming that he was violating their constitutional rights; Kish moved to intervene in the suit. The plaintiffs requested various legal and equitable remedies, including injunctive and declaratory relief. The district court, however, granted Judge Conlin's Rule 12(b)(6) motion. The district court concluded that the plaintiffs' claims for damages were barred by the doctrine of judicial immunity. The court also dismissed the plaintiffs' claims for injunctive and declaratory relief on the grounds that the *Younger* doctrine required the court to abstain from hearing the case.[1]

The plaintiffs then filed this timely appeal.

### II

■ The plaintiffs first argue that district court used the wrong standard when it decided the Rule 12(b)(6) motion. This court reviews *de novo* a dismissal of a complaint pursuant to Rule 12(b)(6). *In re Delorean Motor Co.*, 991 F.2d 1236, 1239–40 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

In this case, the district court cited *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976) for the proposition that, when considering a Rule 12(b)(6) motion, all allegations must be taken as true and viewed in the light most favorable to the plaintiff. The district court concluded that "[t]he actions in plaintiffs' complaint were all conducted within defendant's judicial capacity. These actions were also within the clear jurisdiction of defendant as a circuit court judge." Although

the district court did not cite the *Conley* test, it is clear from the body of the opinion that the court found that there was no set of facts that would allow these plaintiffs to recover against Judge Conlin. Consequently, the district court did not err in this regard.

■ The plaintiffs also suggest that the district court abused its discretion in granting Judge Conlin's motion without first hearing oral argument. It is within the district court's discretion to expedite a case by ordering "the submission and determination of motions without oral argument. . . ." Fed. R.Civ.P. 78. The district court did not abuse its discretion in this respect, as will become clear in the discussion of the merits of the plaintiffs' case.

■ Finally, there is also a suggestion in the plaintiffs' brief that the district court should have allowed them to amend their complaint if the facts were insufficient to state a claim. The plaintiffs, however, never requested leave to amend their complaint and this argument is not properly before this court. *Pinney Dock & Transp. Co. v. Penn Centr. Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).

### III

■ The plaintiffs contend that Judge Conlin is liable for money damages because he acted without jurisdiction, beyond his jurisdiction, in a non-judicial capacity, and in a legislative capacity. "[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco*, —— U.S. ——, ——, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991) (per curiam). A judge is liable for money damages in only two circumstances: (1) where the judge acts in a non-judicial capacity; and (2) where the judge acts "in the complete absence of all jurisdiction." *Id.* —— U.S. ——, 112 S.Ct. at 288.

■ When a plaintiff alleges that a judge acted in a non-judicial capacity, this court relies "on a functional analysis to determine which acts are protected, meaning that one

---

**1.** Kish's motion to intervene was denied as moot since her proposed complaint suffered from the same infirmities as Thorson's and Mann's complaint.

must determine whether the actions are truly judicial acts or 'acts that simply happen to have been done by judges.'" *Morrison v. Lipscomb,* 877 F.2d 463, 465 (6th Cir.1989) (quoting *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988)). "Paradigmatic judicial acts" are those that involve resolution of disputes "between parties who have invoked the jurisdiction of a court...." *Forrester,* 484 U.S. at 227, 108 S.Ct. at 544. "A judge will not be deprived of immunity because the action he took was in error...." *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978).

## A

The United States Supreme Court has delineated types of acts by judges that are non-judicial and thus are not protected by the aegis of judicial immunity. For example, the Court has held that administrative decisions by judges are open to suit. *Forrester,* 484 U.S. at 228, 108 S.Ct. at 544. In *Forrester,* the issue was whether a state judge was immune from suit for allegedly demoting and then discharging an employee on account of her sex. The Court found that the judge's acts "may have been quite important in providing the necessary conditions of a sound adjudicative system. The decisions at issue, however, were not themselves judicial or adjudicative." *Forrester,* 484 U.S. at 229, 108 S.Ct. at 545. As we stated in *Morrison, supra,* the judge in *Forrester* was not entitled to judicial immunity because he was acting not as judge but "as an employer who is also a judge." *Morrison,* 877 F.2d at 465.

We applied the *Forrester* analysis in *Morrison* and held that a presiding judge was not immune from suit when he declared a moratorium on the issuance of writs of restitution by directing the clerk's office under his control not to issue any such writs regardless of other judges' orders. This moratorium prevented the plaintiff, Morrison, from retrieving some of his rental properties for over three weeks. *Morrison,* 877 F.2d at 464. We found that the judge's order was not a judicial act because it "did not alter the rights and liabilities of any parties but, rather, instructed court personnel on how to pro-

cess the petitions made to the court." *Id.* at 466. We concluded that the moratorium differed from an adjudication because, in the latter case, the aggrieved party could, in most cases, appeal the court's decision, whereas an aggrieved party in the former case had no direct way to appeal an administrative order.

■ In this case, the plaintiffs have failed to allege any acts by Judge Conlin that fall within the definition of "administrative acts" as outlined above. The plaintiffs allege that Judge Conlin's acts of setting dates for hearings and of collecting attorney's fees that he had previously adjudged due were administrative rather than judicial acts. However, we find that while Judge Conlin's acts may have occasionally been in error or seemed unduly harsh, there is no escaping the conclusion that the offending acts are "judicial." In this case, Judge Conlin's orders affected the rights only of the individual plaintiffs in specific judicial proceedings; these acts are example of the "paradigmatic judicial acts" discussed in *Forrester* and *Morrison.* Thus, we hold that Judge Conlin was acting in his judicial capacity and is entitled to immunity for each of the allegedly "administrative" acts.

## B

■ The plaintiffs also allege that Judge Conlin is liable for money damages because he lacked jurisdiction to enter certain orders in their cases. A judge will lose judicial immunity if he acts in the "clear absence of all jurisdiction." *Stump,* 435 U.S. at 357, 98 S.Ct. at 1105. There is a "clear absence of jurisdiction" when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction, such as when a probate court conducts a criminal trial. *Stump,* 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7 (citing *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351–352, 20 L.Ed. 646 (1872)).

■ In their briefs and at oral argument, the plaintiffs argued that Judge Conlin acted in a legislative capacity by making rules for his courtroom. They cite *Supreme Court v. Consumers Union of the U.S., Inc.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)

and *Alia v. Michigan Supreme Court,* 906 F.2d 1100 (6th Cir.1990) for the proposition that rule-making is a legislative, not a judicial, function. Since, the plaintiffs argue, the only court with jurisdiction to make court rules is the Michigan Supreme Court, Judge Conlin, by making rules, was *a priori* acting outside of his jurisdiction.

We are not persuaded that Judge Conlin's actions in this case rise to the level of "rule-making." As a matter of course, a judge in a domestic relations case must enter orders regarding visitation, custody, and support issues. The fact that a judge's orders follow a certain pattern does not automatically convert those orders into "rules." Judges, even Justices of the Supreme Court of the United States, from time to time make declarations as to what their policy will be on future cases coming before them. *See, e.g., Callins v. Collins,* — U.S. —, —, 114 S.Ct. 1127, 1130, 127 L.Ed.2d 435 (1994) (Blackmun, J., dissenting from denial of *certiorari*) (Justice declaring that he will henceforth never vote to uphold the constitutionality of a death sentence); *Sullivan v. Askew,* 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 159 (1977) (Brennan and Marshall, JJ., dissenting from denial of *certiorari*) (Justices declaring that they believe death penalty to be unconstitutional in all circumstances).

Here, Judge Conlin is a judge in a Michigan circuit court. The circuit court is a "trial court of general jurisdiction" and is given the exclusive power to conduct trials. Mich. Const. Art. IV, § 1. The Michigan Court Rules grant Judge Conlin the power to enter orders, such as the ones complained of here, to effectuate his judgments. *See, e.g.,* Mich. Ct.R. 3.206(A); Mich.Ct.R. 2.503(D). In light of these facts, "neither the procedural errors [the defendant] may have committed nor the lack of a specific statute authorizing" his actions renders him liable for damages for his actions. *Stump,* 435 U.S. at 359, 98 S.Ct. at 1106.

The plaintiffs have failed to allege any facts that indicate Judge Conlin's acts were either non-judicial or done in the complete absence of jurisdiction. The plaintiffs' cursory allegations are simply insufficient to state a claim against a defendant who is presumptively protected by judicial immunity. Consequently, the district court was correct in granting Judge Conlin's Rule 12(b)(6) motion on the plaintiffs' claims for damages.

## IV

The plaintiffs contend that the district court erred in dismissing their claims on the grounds that the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) required the district court to abstain from hearing their claim for injunctive and declaratory relief. Although "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity," *Pulliam v. Allen,* 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984), a federal court should abstain from hearing challenges to a state's exercise of its jurisdiction in civil cases if the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987) (applying the *Younger* doctrine to state civil proceedings).

A federal court should abstain whenever it determines "(1) that state proceedings are pending; (2) that the state proceedings involve an important state interest; and (3) that the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Nilsson v. Ruppert Bronson & Chicarelli Co.,* 888 F.2d 452, 454 (6th Cir.1989). This court reviews *de novo* a district court's decision to abstain under the *Younger* doctrine. *Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 721 (6th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

Assuming that the plaintiffs have alleged facts that make injunctive and declaratory relief appropriate,[2] the district court was nonetheless correct in abstaining on the basis of the *Younger* doctrine. First, all three

---

**2.** Equitable relief against a judge, as with any other defendant, is limited to cases where there is "a showing of an inadequate remedy at law

and of a serious risk of irreparable harm...." *Pulliam,* 466 U.S. at 537, 104 S.Ct. at 1978 (citation omitted).

106

plaintiffs have domestic relations cases that are all apparently still pending in Michigan Circuit Court. Second, the state proceedings involve a paramount state interest, *i.e.,* domestic relations law. *See, e.g., Parker v. Turner,* 626 F.2d 1, 4 (6th Cir.1980). Finally, the plaintiffs have failed to show that the Michigan courts cannot or will not provide an adequate opportunity to raise their constitutional claims. Consequently, the district court was correct in dismissing the plaintiffs' claim for prospective relief.

For the above-stated reasons, we AFFIRM the district court's order dismissing the plaintiffs' claims.